966 P.2d 648

**In the Matter of the Tax Appeal of Ray K. KAMIKAWA, Director of Taxation, State of Hawai'i, Appellant,**

v.

**UNITED PARCEL SERVICE, INC., Appellee.**

**No. 21467**

Supreme Court of Hawai'i.

Oct. 29, 1998.

Josephine L. Chang and Girard D. Lau, Deputy Attorneys General, on the briefs, for Appellant.

Richard R. Clifton and Patrick W. Hanifin (of Cades Schutte Fleming & Wright), Honolulu and Richard D. Birns and Madeleine Sann (of Philadelphia, PA), on the briefs, for Appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

MOON, Chief Justice.

This appeal arises from the Tax Appeal Court's order granting Appellee United Parcel Service's [hereinafter, UPS] Motion for Summary Judgment and denying Appellant Ray K. Kamikawa, Director of Taxation, State of Hawaii's [hereinafter, Kamikawa or State] Motion for Summary Judgment. The issue presented in this appeal is whether the Federal Aviation Act (FAA), which regulates "air transportation," preempts Hawai'i Revised Statute (HRS) § 239-6 (1976)—Hawaii's Public Service Company (PSC) tax statute [1]—as it applies to the gross receipts that are attributable to the ground transportation of packages that UPS transports interisland and/or between Hawai'i and the mainland United States.

Specifically, on appeal, Kamikawa contends that the Tax Appeal Court's order granting UPS's motion for summary judgment and denying his motion for summary judgment should be reversed for the following reasons: (1) the revenues received by UPS in the instant matter are derived from the sale of "ground transportation," and not "air transportation" as defined by 49 U.S.C. § 1301

[now codified at 49 U.S.C. § 40102]; and (2) the tax appeal court erred in concluding as a matter of law that, as applied, 49 U.S.C. § 1513 [now codified at 49 U.S.C. § 40116] preempts the PSC tax as it applies to UPS's gross receipts derived from the ground portion of its air package service.

Because Kamikawa is correct in each of these contentions, we vacate the decision of the Tax Appeal Court and remand with instructions that the Tax Appeal Court enter summary judgment in favor of Kamikawa.

## I. BACKGROUND

UPS is a specialized common carrier offering an integrated air and ground transportation service for small packages.[2] UPS provides door-to-door transportation of packages from the premises of its customers to the premises of the recipients of those packages. UPS ships packages intraisland, interisland, and to or from the mainland United States. UPS charges customers for all services—air and ground transportation—on one bill.

UPS began operating in Hawai'i in 1977. From 1977 to 1984, service was confined to O'ahu and consisted of (1) transportation of packages between points on O'ahu and (2) transportation of packages between O'ahu and the mainland. In June 1984, UPS extended service to the other Hawaiian islands. Based on the service it provided during these years, UPS filed PSC tax returns in which it reported (1) gross receipts derived from the intraisland (i.e., entirely "ground") packages and (2) gross receipts derived from "air pack-

---

1. HRS § 239-6 provides in relevant part:

 § 239-6 **Airlines, certain carriers.** There shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business; ... *There shall be levied and assessed upon each motor carrier ... a tax of four per cent of its gross income each year from the motor carrier ... business.* The tax imposed by this section is a means of taxing the personal property of the airline or other carrier, tangible and intangible, including going concern value, and is in lieu of the tax imposed by chapter 237 but is not in lieu of any other tax.
 (Emphasis added.)

2. Kamikawa emphasizes that UPS is incorporated as a "motor carrier" and, by virtue of that fact, should not be considered a provider of air transportation. This fact has limited significance for two reasons. First, UPS does not contest the PSC taxes assessed on its purely *intraisland* ground transportation. Second, whether UPS deems itself a "motor carrier" or an "airline" under HRS § 239-6 does not dispose of the issue presented here, i.e., whether UPS's interisland and Hawai'i-to-mainland transportation of packages is considered entirely "air transportation," and thus nontaxable, or partly "ground transportation" and thus taxable. The substance of the service UPS provides, not its corporate structure, governs the analysis of this decision.

ages," which includes partly air and partly ground transportation.

On November 1, 1983, the United States Supreme Court, in *Aloha Airlines v. Director of Taxation,* 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), held that the FAA, 49 U.S.C. § 1513, preempts Hawaii's PSC tax insofar as it applies to gross receipts derived from "air transportation." Thereafter, on June 15, 1984, UPS filed an amended PSC tax return for the years 1977 through 1983, claiming a refund of all PSC taxes it had paid with respect to the "ground portion of gross receipts from air packages." In addition to its refund claim, UPS paid PSC taxes for 1984 based on gross receipts from intraisland packages, but paid no tax on any portion of gross receipts from packages it transported between points on different islands and between points in Hawai'i and the mainland. The State denied UPS's claims for a refund on the ground that 49 U.S.C. § 1513 does not preempt Hawaii's power to tax the gross receipts from the ground transportation portion of air packages.

Thereafter, on October 29, 1984, UPS filed a "Notice of Appeal to Tax Appeal Court from Assessor" (notice of appeal), appealing the State's assessment of Hawai'i PSC taxes, pursuant to HRS § 239–6, for the tax years 1977 through 1984. UPS conceded before the Tax Appeal Court that it had failed to file its refund claim within the three-year statute of limitations provided in HRS §§ 239–7 and 235–111(a) (1976); therefore, only UPS's refund claims for 1981 through 1983 and the State's PSC tax assessment for 1984 are before this court. Further, because it agreed that Hawai'i may assess PSC taxes on purely "ground transportation," UPS only appealed the State's taxation of gross receipts attributable to the ground transportation portion of air packages that travel interisland and/or between Hawai'i and the mainland United States.

On June 30, 1989, UPS filed a motion for summary judgment, and, on December 22, 1989, the parties stipulated to continue the hearing on UPS's motion "until further moved on by either party in order to allow discovery to be completed in this case." On April 16, 1997, the Tax Appeal Court gave notice to the parties that it would dismiss the case with prejudice for want of prosecution unless the parties objected and showed good cause why the case should not be dismissed. Upon UPS's objection showing good cause, the Tax Appeal Court scheduled the case for trial.

Thereafter, on December 12, 1997, UPS withdrew its June 30, 1989 motion for summary judgment, and the parties filed cross-motions for summary judgment. The Tax Appeal Court held oral argument on January 13, 1998. On January 28, 1998, the Tax Appeal Court entered an order granting UPS's motion for summary judgment and denying Kamikawa's cross-motion for summary judgment.

Following entry of final judgment on March 6, 1998, Kamikawa timely appealed.

## II. *STANDARD OF REVIEW*

 This court reviews an award of summary judgment *de novo,* under the same standards applied by the trial court. Therefore, "[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." *Crompton v. Tern Corp.,* 83 Hawai'i 1, 6, 924 P.2d 169, 174 (1996) (emphasis and brackets in original) (citation omitted).

 Where, as here, the appeal is from the Tax Appeal Court, it is well settled that, in reviewing the findings of fact, "a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was 'clearly erroneous.'" *Weinberg v. City and County of Honolulu,* 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996) (citation omitted). Inasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court "under the right/wrong standard." *Id.*

## III. DISCUSSION

■ The dispositive issue on appeal is whether the ground transportation portion of air packages that UPS transports interisland and/or between Hawai'i and the mainland constitutes non-taxable "air transportation" under the FAA. The short answer is it does not.

As explained below, we agree that the FAA preempts Hawaii's PSC tax on revenues derived from "air transportation." We hold, however, that the Tax Appeal Court erred when it concluded that "the revenues received by UPS in the instant matter are derived from the sale of 'air transportation.'" Consequently, we further hold that the State may assess PSC taxes on the gross receipts that UPS receives for the ground transportation portion of air packages that travel interisland and/or between Hawai'i and the mainland.

### A. 49 U.S.C. § 1513[3] Preempts HRS § 239–6 Insofar As It Assesses Taxes On "Air Transportation."

UPS attempts to rely on the United States Supreme Court's decision in *Aloha Airlines v. Director of Taxation*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), for the proposition that the FAA, 49 U.S.C. § 1513, preempts Hawaii's PSC tax on the ground portion of gross receipts from air packages. This argument lacks merit.

In *Aloha Airlines*, the Supreme Court addressed the issue of whether 49 U.S.C. § 1513(a) preempted HRS § 239–6 as it applied to the gross income of airlines operating within the state. Specifically, the State assessed taxes against Aloha Airlines, Inc. and Hawaiian Airlines, Inc., as public service companies, under the following provision:

There shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business[.] ... The tax imposed by this section is a means of taxing the personal property of the airline or other carrier, tangible and intangible, including going concern value, and is in lieu of the [general excise] tax imposed by chapter 237 but is not in lieu of any other tax.

HRS § 239–6. Aloha Airlines and Hawaiian Airlines "sought refunds for taxes assessed under this provision *for the carriage of passengers* between 1974 and 1977[, and between 1974 and 1978, respectively]." *Aloha Airlines*, 464 U.S. at 11, 104 S.Ct. 291 (emphasis added).

In a consolidated appeal following decisions in the Tax Appeal Court, this court held that 49 U.S.C. § 1513(a) did *not* preempt HRS § 239–6 as it applied to taxes assessed on gross receipts derived from the carriage of passengers. The United States Supreme Court reversed.

Concluding that we had failed to give effect to the plain meaning of section 1513(a), the Supreme Court held that section 1513(a) "proscribes the imposition of state and local taxes on *gross receipts derived from air transportation or the carriage of persons in air commerce*." *Aloha Airlines*, 464 U.S. at 15, 104 S.Ct. 291 (emphasis added). Thus, it was improper for Hawai'i to assess taxes on the gross receipts Aloha Airlines and Hawaiian Airlines derived from the carriage of passengers.

In the present case, by contrast, Kamikawa does *not* seek to assess taxes on the "air transportation" that UPS provides. Rather, Kamikawa argues only that UPS cannot escape Hawaii's PSC tax on the *ground portion* of gross receipts from air packages. We therefore reject UPS's attempt to characterize Kamikawa's arguments here as a mere "recycling" of the same arguments made in

---

**3.** The preemption statute, originally codified at 49 U.S.C. § 1513, provided in relevant part:

§ 1513. **State taxation of air commerce**
(a) **Prohibition; exemption**
No State ... shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, ... *on the sale of air transportation or on the gross receipts derived therefrom* []....
(b) **Permissible State taxes and fees**

Nothing in this section shall prohibit a State ... from the levy or collection of taxes other than those enumerated in subsection (a) of this section[.]
49 U.S.C. § 1513 (Supp.1973) (emphasis added). In 1994, Congress recodified section 1513 at 49 U.S.C. § 40116(b) (1994). Both parties agree that Congress intended the recodification to make no substantive change to section 1513.

*Aloha Airlines* and, as explained below, agree with Kamikawa.

B. *UPS's Revenues In The Instant Matter Are Not Derived From The Sale Of Air Transportation.*

■ We note that this court has previously "rejected an approach to statutory construction which limits us to the words of a statute[ ].... Thus, the plain language rule of statutory construction does not preclude an examination of sources other than the language of the statute itself even when the language appears clear upon perfunctory review." *Crompton,* 83 Hawai'i at 6, 924 P.2d at 174. In the present case, the plain language of 49 U.S.C. § 1513 indicates that Hawaii's PSC tax is not preempted insofar as that tax applies to the ground portion of UPS's gross receipts from air packages. *Cf. Aloha Airlines,* 464 U.S. at 12 n. 6, 104 S.Ct. 291.

As previously noted, UPS argues that "100% of the gross receipts received by UPS for the transportation of air packages constitutes gross receipts derived from the sale of air transportation." In support of this argument, UPS points to 49 U.S.C. § 1301, which contains definitions of terms used throughout the FAA. Section 1301(10) defines "air transportation" as "interstate, overseas, or foreign air transportation or the transportation of mail by aircraft." 49 U.S.C. § 1301(10) (1970).[4] Section 1301(21) defines the term "interstate air transportation" as follows:

"Interstate air transportation" ... mean[s] the *carriage by aircraft* of persons or property ... in commerce between[ ] ...

(a) a place in any State of the United States[ ] ... and any place in any other State of the United States[ ] ... or between places in the same State of the United States through the airspace over any place outside thereof[ ]....

. . . .

*whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation.*

49 U.S.C. § 1301(21) (1970) (emphasis added).

Focusing on the final clause of the definition contained in section 1301(21), UPS argues that the FAA's preemption of State taxes on "the sale of air transportation or on the gross receipts derived therefrom," 49 U.S.C. § 1513(a), applies to gross receipts derived from transactions where the packages move "wholly by aircraft or partly by aircraft and partly by other forms of transportation." 49 U.S.C. § 1301(21). Thus, UPS argues, where *any part* of the transportation occurs by air, the *entire* transaction falls within section 1301's definition of "interstate air transportation" and thus within section 1513(a)'s preemptive reach. UPS's interpretation, although superficially appealing, fails upon deeper analysis.

As Kamikawa points out, UPS's reading is unnatural, forced, and omits certain terms. According to the body of the definition contained in section 1301(21), "interstate air transportation" means "*carriage by aircraft.*" 49 U.S.C. § 1301(21) (emphasis added). From the structure of section 1301(21), the placement of these terms indicates that the "by aircraft" limitation applies throughout the definition; UPS ignores these limiting terms in its reading of the statute.

Additionally, the final clause—"whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation"—is set out in such a way that it also applies to the whole of section 1301(21), not merely its indented sub-subsections. The final clause thus refers to the overall interstate flow of commerce involved. That is, these terms indicate Congress' intent to give the Federal Aviation Agency jurisdiction over the "air transportation" portions of interstate trips whether such trips occur wholly by aircraft, or partly by aircraft and partly by another type of transportation. In this way, the FAA includes intrastate transportation "by aircraft" where the overall transportation involved is of an interstate nature. As Kamikawa points out, the "such commerce"[5] language in the final clause of

---

4. 49 U.S.C. § 1301(10) has been recodified at 49 U.S.C. § 40102(a)(5) (1994).

5. UPS points out that, in the recodification of section 1301(21) at 49 U.S.C. § 40102(a)(25), Congress removed the phrase "in commerce" as

section 1301(21) merely confirms Congress's desire to include within the definition of "interstate air transportation" *all* segments whereby "persons or property" are carried *"by aircraft."* In other words, Congress did not want States to tax "the sale of air transportation" based on the fact that some portion of the overall transportation occurred other than by air.

Moreover, this interpretation is reinforced by the fact that UPS's interpretation would extend the preemptive reach of section 1513 to insupportable lengths. For example, under UPS's interpretation, a package could be sent by *rail* from Indianapolis to Chicago, then sent by *truck* to San Francisco, then sent by *ship* to Honolulu, and then sent by *air* to its ultimate destination in Hilo, Hawaiʻi, and the entire revenue derived from shipment would be immunized from State taxation because only a fraction of the transportation was by air. UPS's interpretation, taken to its extreme, would thereby preempt state taxation of shipment by rail, motor, and shipping carriers, a result Congress certainly did not intend. Although UPS attacks such scenarios as unrealistic, it does not alter the fact that Kamikawa's interpretation is the more logical one and does not lead to absurd results.

Kamikawa contends, and we agree, that this case parallels *In re Dave's Motor Transportation, Inc.*, No. TSB-D-90(3)C, 1990 N.Y. Tax Lexis 100 (N.Y. Tax Appeals Trib. Mar. 22, 1990). In *Dave's Motor Transportation,* the New York Tax Appeals Tribunal addressed the precise issue presented here—that is, "whether [taxpayer's] activities con-

stitute the conduct of trucking … [i.e., non-air] transportation … within the meaning of … [New York's analogous tax provisions] and, if so, whether the imposition of taxes pursuant to [those] sections is prohibited by section 1113 of the Federal Aviation Act (49 USC § 1513)." *Id.* at *1–2.

In addressing this issue, the New York Tax Appeals Tribunal noted facts about the taxpayer that bear striking resemblance to the facts here. Similar to the activities of UPS, Dave's Motor "engaged in the pickup and delivery of air cargo transported by airlines. In this capacity, [Dave's Motor] picked up freight from various locations in New England and delivered the same to Logan [Airport, in Boston, Massachusetts]." *Id.* at *3. Moreover, the containers that Dave's Motor transported were owned by American Airlines and bore the "AA" insignia. The trucks also bore the AA insignia and were numbered on AA records to correspond to a particular flight. *See id.* at *4. Finally, as with UPS, "the air freight which [Dave's Motor's] vehicles and drivers serviced moved under a single airway bill of lading for a single charge which covered the entire ground-air movement from origin to final destination[.]" [6] *Id.* at *6.

Based on these facts, the New York Tax Appeals Tribunal concluded that Dave's Motor "was engaged in the trucking business" within the definition of the applicable tax provisions. *Id.* at *8. Further, the tribunal held that "[t]he receipts at issue represent only payments from American Airlines to [Dave's Motor] … *to accomplish only the ground portion of the transportation." Id.*

mere surplusage. This observation lacks any force for three reasons. First, as UPS itself points out, Congress intended to make no substantive changes with recodification. Second, this case deals with the operative language of the statute—49 U.S.C. § 1301(21)—as it existed between 1981 and 1984, when the facts giving rise to the tax appeal took place. Finally, even without the "in commerce" language, the recodified statute still defines "interstate air transportation" as "the transportation of passengers or property *by aircraft.*" 49 U.S.C. § 40102(a)(25) (emphasis added).

**6.** We also note that, although UPS's incorporation as a "motor carrier" is not dispositive of the service it provides, the record indicates that

the UPS entity involved in this case contracts out, and receives payments for, its services on a per package basis. As an example, a letter agreement between United Parcel Service Co. (UPSCo.) and United Parcel Service, Inc. (Ohio), states: "7. *Charges* … (a) for your services in connection with originating packages in the areas covered herein, we will pay you as follows: $1.13 per 2nd Day Air package[,] $2.46 per Next Day Air package[, and] $2.46 per International Air package." A similar schedule of charges applied to "packages to be delivered." It is also clear from the letter agreement that the terms "originating packages" and "packages to be delivered" referred to the *ground portion* of transportation of air packages.

at *11 (emphasis added). As in *Dave's Motor*, the tax revenues at issue here are derived from "the ground portion of the transportation" that UPS provides.

We also agree with the N.Y. Tax Appeals Tribunal's observation that 49 U.S.C. § 1513 "was intended to include only air transportation and air commerce *by aircraft* and not other forms of service or transportation which may affect air transportation or air commerce by aircraft." *Id.* at *12 (emphasis added) (citations omitted); *see also Salem Transp. Co. v. Port Auth. of N.Y. & N.J.*, 611 F.Supp. 254, 257 (S.D.N.Y.1985) ("There is no evidence that [section] 1513(a) would include a prohibition of fees on ground transportation service.").

In support of its preferred interpretation, UPS relies chiefly upon the following cases: *City of Philadelphia v. Civil Aeronautics Board*, 289 F.2d 770 (D.C.Cir.1961); *Federal Express Corp. v. California Public Utilities Comm'n*, 936 F.2d 1075 (9th Cir.1991), *cert. denied*, 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992); and *Airborne Freight Corp. v. Department of Taxation and Finance*, 137 A.D.2d 30, 527 N.Y.S.2d 107 (N.Y.App.Div.1988). However, UPS's reliance on these cases is misplaced.

In *City of Philadelphia*, the City of Philadelphia (Philadelphia) challenged Flying Tiger Line's (FTL) proposal to provide trucking service between Philadelphia and Newark Airport instead of "air service," which FTL previously provided. Philadelphia argued that the "Certificate of Convenience and Necessity" issued by the Civil Aeronautics Board (CAB), under which FTL had authority to operate, required FTL to provide "air service." The United States Court of Appeals for the District of Columbia (D.C.Circuit) rejected Philadelphia's argument and concluded that the CAB's Certificate did not require FTL to ship its freight by air between Newark and Philadelphia. *City of Philadelphia*, 289 F.2d at 773.

In reaching this conclusion, the D.C. Circuit noted that "the California–Newark–Philadelphia movement of freight is air transportation notwithstanding the 90–mile link between Newark and Philadelphia served by truck." *City of Philadelphia*, 289 F.2d at 774. Based on this language, UPS contends that *City of Philadelphia* conclusively answers the question presented here. We disagree.

The D.C. Circuit based its decision primarily on the following language found in the CAB's Certificate of Convenience and Necessity: "Upon compliance with such procedure relating thereto as may be prescribed by the Board, *the holder may regularly serve a point named herein through any airport convenient thereto[.]*" *City of Philadelphia*, 289 F.2d at 772 (emphasis added). Based on this language, and emphasizing the "public interest" involved, the D.C. Circuit noted that FTL could provide trucking service, as opposed to air service, between Philadelphia and Newark because "the Newark Airport is *convenient to* Philadelphia within the meaning of the Tiger certificate." *Id.* (emphasis added). The D.C. Circuit did undertake a cursory analysis of the term "air transportation" under 49 U.S.C. § 1301(21); but that analysis was unnecessary to its decision and, insofar as *City of Philadelphia* stands for the proposition that "air transportation" includes transportation other than "by aircraft," 49 U.S.C. § 1301(21), we believe it is wrongly decided.[7]

7. We also reject UPS's contention that, when Congress used the term "air transportation" in section 1513, "it must be presumed to have had knowledge of, and to have adopted, the existing judicial construction of that phrase" as used in *City of Philadelphia.* The existence of one decision relating to the term in question, rendered twelve years prior to section 1513's enactment, differs from circumstances where "Congress exhibited [ ] a detailed knowledge of ... [the] judicial interpretation [of the provisions at issue]." *Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378 n. 61, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) ("The legislative history thus leaves little doubt that Congress was persuaded [by]," and thus had knowledge of, existing case law interpretation). We will not presume, in the present case, that Congress adopted the interpretation found in *City of Philadelphia*, especially when the language clearly indicates a contrary interpretation.

The remaining cases upon which UPS relies are also inapposite. In *Federal Express*, the Ninth Circuit held that the Airline Deregulation Act, 49 U.S.C. § 1305 (1978), preempted state regulation of Federal Express, *including* its trucking services. *Federal Express*, 936 F.2d at 1079. This decision, however, was based on the very different language of 49 U.S.C. § 1305(a)(1), which states: "[N]o State ... shall enact or enforce any law, rule, regulation, ... *relating to* rates, routes or services of *any air carrier* having authority ... to provide air transportation." *Id.* at 1077 (emphases added). Congress, therefore, expressly preempted a much broader range of state regulation under section 1305 than it preempted under section 1513.[8] *Federal Express* does not, therefore, support UPS's claim here.

Moreover, other cases upon which UPS relies either fail to address the specific question presented here, *see Airborne Freight Corp.*, 527 N.Y.S.2d at 109 (expressly refusing to decide defendant's argument that New York could lawfully impose a tax "on the portion of plaintiffs' gross receipts representing their charges for services which do not involve air transportation"), or fail to address the fact that the taxpayer's revenues could be allocated between air and non-air components. *See Air Polynesia, Inc. v. Dias*, No. 2250 at 2–3 (Haw. Tax App.Ct. May 24, 1985) (noting only that the taxpayer "carries property and mail by aircraft," the court did not discuss whether the taxpayer provided non-air transportation).

Given the analysis above, we hold that UPS's gross receipts derived from the ground transportation (i.e., portions not attributable to "air transportation") of air packages may be taxed pursuant to HRS § 239–6. Two additional observations reinforce this conclusion. First, "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Kawamata Farms, Inc. v. United Agri Prod.*,

86 Hawai'i 214, 232, 948 P.2d 1055, 1073 (1997) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). Second, "[i]n all preemption cases, ... we start with the assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

Congress only clearly preempted the States' power to levy taxes on "the sale of air transportation or on the gross receipts derived therefrom." 49 U.S.C. § 1513(a); *see also Aloha Airlines*, 464 U.S. at 15, 104 S.Ct. 291 (holding that section 1513(a) preempts State taxation of "gross receipts derived from air transportation or the carriage of persons in air commerce"). In the present case, UPS seeks to avoid the imposition of taxes on the gross receipts that it receives for the ground transportation portion of freight that travels partly by air. Because we conclude that such gross receipts do not qualify as "the sale of air transportation or [ ] the gross receipts derived therefrom," we hold that 49 U.S.C. § 1513 does not prevent Kamikawa from assessing taxes under HRS § 239–6 on that portion of UPS's gross receipts.

## IV. CONCLUSION

Because there is no genuine issue of material fact and the Tax Appeal Court erroneously interpreted the preemptive reach of 49 U.S.C. § 1513, we vacate the decision of the Tax Appeal Court granting UPS's motion for summary judgment and denying Kamikawa's motion for summary judgment. We remand this case with instructions to the Tax Appeal Court to enter summary judgment in favor of Kamikawa, the Director of Taxation, State of Hawai'i.

---

8. UPS also contends that Kamikawa should be bound by Hawai'i Public Utility Commission's (HPUC) determination that "UPS's service involving the pick-up and delivery service *incidental to its air shipments* moving between the islands has been federally preempted and that the

State of Hawai'i has no jurisdiction to regulate the proposed UPS Service." As in the *Federal Express* case, HPUC's determination was based on 49 U.S.C. § 1305, a much broader preemption statute.