968 P.2d 653

**In the Matter of the Tax Appeal of Ray K. KAMIKAWA, Director of Taxation, State of Hawaiʻi, Appellant,**

v.

**LYNDEN AIR FREIGHT, INC., a Washington corporation, Appellee.**

No. 21434.

Supreme Court of Hawaiʻi.

Nov. 25, 1998.

Josephine L. Chang and Girard D. Lau, Deputy Attorneys General, On the briefs, for appellant.

Roger H. Epstein and Milton Yasunaga (of Cades Schutte Fleming & Wright),and Gregg D. Barton (of Bogle & Gates, pro hac vice, Bellevue, WA),for appellee.

MOON, C.J.,·KLEIN, LEVINSON, NAKAYAMA, AND RAMIL, JJ.

·OPINION OF THE COURT BY MOON, C.J.

This appeal arises from the Tax Appeal Court's order granting appellee Lynden Air Freight, Inc.'s, [hereinafter, Lynden] motion for summary judgment and denying appellant Ray K. Kamikawa, Director of Taxation, State of Hawaii's [hereinafter, Kamikawa or the State] motion for summary judgment. This case presents the issue of whether the Federal Aviation Act (FAA), which regulates "air transportation," preempts Hawai'i Revised Statute (HRS) § 237–13(6) (1985)[1]— Hawaii's general excise tax statute—as it applies to that portion of gross receipts that Lynden receives for the ground transportation and other non-air services of its freight forwarding business.

Specifically, Kamikawa contends on appeal that the Tax Appeal Court's order granting Lynden's motion for summary judgment, and denying his motion for summary judgment, should be reversed for the following reasons: (1) Hawai'i assessed general excise taxes on only that portion of Lynden's gross receipts that are properly allocated to the ground transportation and other non-air services of its freight forwarding business, and not on "air transportation" as defined by 49 U.S.C. § 40102 (1994); and (2) the Tax Appeal Court erred in concluding as a matter of law that, as applied, 49 U.S.C. § 40116 (1994)[2] preempts Hawai'i from imposing general excise taxes on the portion of Lynden's revenues allocated to the ground transportation and other non-air services of its freight forwarding business.

Based on our recent decision in *In re Tax Appeal of Kamikawa v. United Parcel Service [ (UPS) ], Inc.*, 88 Hawai'i 336, 338, 966 P.2d 648, 650 (1998) (holding that 49 U.S.C. §§ 1301 and 1513 did *not* preempt HRS § 239–6, Hawaii's Public Service Company tax statute, insofar as it applied to the gross receipts that UPS received for the ground transportation portion of packages that travel partly by air), we agree with Kamikawa's contentions on appeal. We, therefore, vacate the decision of the Tax Appeal Court and remand this case with instructions that the Tax Appeal Court enter summary judgment in favor of Kamikawa.

## I. BACKGROUND

Lynden is a Washington corporation, headquartered in Seattle, Washington and registered to do business in Hawai'i. It is an air freight forwarder, providing door-to-door delivery of freight worldwide, including delivery

---

1. HRS § 237–13 provides in relevant part:

 **§ 237–13 Imposition of tax.** There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:

 . . . .

 (6) Tax on service business. Upon every person engaging or continuing within the State in any service business ... there is likewise hereby levied and shall be assessed and col-

 lected a tax equal to four per cent of the gross income of any such business....

 Although the legislature amended this statute in 1992, no changes were made to the operative language of the provisions at issue in this case.

2. In 1994, Congress recodified 49 U.S.C. §§ 1301 and 1513 as 49 U.S.C. §§ 40102 and 40116 respectively. Although the tax years at issue occurred both before and after recodification, Congress did not intend recodification to effect substantive changes. Thus, we refer only to the recodified versions of the statute.

between points within Hawai'i and between Hawai'i, the mainland United States, and other countries. Lynden delivers freight through independent airlines and motor carriers, which provide the actual aircraft transportation and ground transportation services.

Under these arrangements, third-party motor carriers pick up packages at the customer's location and deliver them to Lynden's warehouse. Lynden employees receive, handle, and sort the packages for particular flights and destinations. The packages are then transported to third-party airlines' freight facilities where they are loaded onto airplanes for delivery. This process is repeated, in reverse, once the packages arrive at airports local to the package recipients. Lynden charges customers for all services—air transportation, ground transportation, and package handling—on one bill.

Believing that Hawai'i could not legally assess general excise taxes on its freight forwarding business, Lynden paid no general excise taxes between 1986 and 1994. Based on the services Lynden provides in Hawai'i, however, the State issued final notices of assessment on May 19, 1997, in which it assessed general excise taxes on that portion of Lynden's gross receipts allocated to the ground transportation and other non-air services of its freight forwarding business for the years 1987 through 1994. The State assessed general excise taxes according to the following formula:

$$\text{Lynden's Total Worldwide Revenue} \times \frac{\text{Lynden's Hawai'i Ground Costs}}{\text{Lynden's Total Worldwide Costs}} = \text{Taxable Gross Receipts}$$

The State used the above formula in an attempt to derive taxable gross receipts (*i.e.*, the portion of Lynden's gross receipts that are *not* derived from the sale of air transportation). The formula multiplies Lynden's worldwide total revenue by a fraction, the numerator of which represents the Hawai'i ground costs and the denominator of which represents Lynden's worldwide total costs.

The above-stated formula derives from HRS § 237–21 (1985), which provides in relevant part:

§ 237–21 **Apportionment** If any person . . . is engaged in business both within and without the State . . . and if under the Constitution or laws of the United States the entire gross income of such person cannot be included in the measure of this tax, there shall be apportioned to the State and included in the measure of the tax that portion of the gross income which is derived from activities within the State, . . . *In other cases,* if and to the extent that the apportionment cannot be accurately made by separate accounting methods, *there shall be apportioned to the State and included in the measure of this tax that proportion of the total gross income, so requiring apportionment, which the cost of doing business within the State, applicable*

*to the gross income, bears to the cost of doing business both within and without the State, applicable to gross income.*

(Emphases added.) Because Lynden is engaged in business within and without Hawai'i, the State used this formula to determine general excise taxes attributable to Lynden's Hawai'i-based activities. Further, by including only ground-related costs, the State attempts to avoid taxing the air service that Lynden provides to its customers. The resulting "taxable gross receipts" figure was then multiplied by the four-percent tax rate found in HRS § 237–13(6), yielding total assessments of $515,832.88 for the tax years in question. Believing that most of the assessment was preempted, Lynden disputed $500,595.28 of the total assessment; however, Lynden agreed by stipulation that, "if the State can tax a portion of Lynden's gross receipts it claims are attributable to ground portions of the delivery service, the assessment of . . . $500,595.28 is correct."

After being assessed, Lynden paid the $515,832.88 assessment, but protested $500,595.28 of the general excise taxes, penalties, and interest and sought a refund in the Tax Appeal Court. On December 16, 1997, Lynden filed a motion for summary judgment, arguing that 49 U.S.C. § 40116 preempted

Hawaii's general excise tax statute, HRS § 237–13(6). At a January 13, 1998 hearing on Lynden's motion, the State orally moved for summary judgment and the Tax Appeal Court heard both Lynden's and the State's motions. On January 28, 1998, the Tax Appeal Court entered an order granting Lynden's motion for summary judgment and denying Kamikawa's cross-motion for summary judgment.

Following the entry of final judgment on February 19, 1998, Kamikawa timely appealed.

## II. STANDARD OF REVIEW

■ This court reviews an award of summary judgment *de novo*, under the same standards applied by the trial court. *See Crompton v. Tern Corp.*, 83 Hawai'i 1, 6, 924 P.2d 169, 174 (1996). Therefore, "[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." *Id.* (emphasis and internal brackets in original) (citation omitted).

■ Moreover, it is well settled that, "in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was 'clearly erroneous.'" *Weinberg v. City and County of Honolulu*, 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996) (citation omitted). Inasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court "under the

right/wrong standard." *Id.* (citation omitted); *Maile Sky Court Co., Ltd. v. City and County of Honolulu*, 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) ("The interpretation of a statute is a question of law.").

## III. DISCUSSION

■ The dispositive issue on appeal is whether the ground transportation and other non-air services that Lynden provides constitutes non-taxable "air transportation" under the FAA. We hold that it does not.

■ Based on our reasoning in *United Parcel Service*, we agree that the FAA preempts the State's ability to assess general excise taxes on revenues derived from the sale of "air transportation." *See United Parcel Service*, 88 Hawai'i at 338–40, 966 P.2d at 650–52. However, for the reasons discussed *infra*, we hold that the Tax Appeal Court erred when it concluded that "[t]he revenues received by Lnden [sic] Air Freight in the instant matter are derived from the sale of 'air transportation' as defined by 49 U.S.C. [§ ] 40102." Consequently, we hold that the State may assess general excise taxes on that portion of the gross receipts that Lynden receives for ground transportation and other non-air services it provides.

A. *49 U.S.C. § 40116 Preempts HRS § 237–13 Insofar As It Assesses General Excise Taxes On "Air Transportation."*

Lynden relies on the United States Supreme Court's decision in *Aloha Airlines v. Director of Taxation*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), for the proposition that the FAA, 49 U.S.C. § 40116(b),[3] preempts HRS § 237–13(6) insofar as it assesses general excise taxes on the gross receipts of Lynden's freight forwarding busi-

---

**3.** Section 40116 provides in relevant part:

**§ 40116. State taxation**

. . . .

(b) **Prohibitions** . . . . a State, a political subdivision of a State . . . may not levy or collect a tax, fee, head charge, or other charge on—
(1) an individual traveling in air commerce;
(2) the transportation of an individual traveling in air commerce;
(3) *the sale of air transportation;* or
(4) *the gross receipts from that air commerce or transportation.*

. . . .

(e) Other allowable taxes and charges . . . . *a State* or political subdivision of a State *may levy or collect—*
(1) *taxes (except those taxes enumerated in subsection (b)* of this section), including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services. . . .

49 U.S.C. § 40116(b) (1994) (bold emphasis in original) (underscored emphases added).

ness, including receipts for ground and non-air service. Lynden's reliance on *Aloha Airlines*, however, is misplaced.

In *Aloha Airlines*, the Supreme Court addressed the issue of whether 49 U.S.C. § 1513(a), currently codified as section 40116(b), preempted HRS § 239–6 as it applied to the gross income of airlines operating within the state. Aloha Airlines and Hawaiian Airlines "sought refunds for taxes assessed under this provision *for the carriage of passengers* between 1974 and 1977[, and between 1974 and 1978, respectively]." *Id.* at 11, 104 S.Ct. 291 (emphasis added).

The Supreme Court concluded that section 1513(a) "proscribes the imposition of state and local taxes on *gross receipts derived from air transportation or the carriage of persons in air commerce.*" *Aloha Airlines*, 464 U.S. at 15, 104 S.Ct. 291 (emphasis added). Thus, the Court held that it was improper for Hawai'i to assess taxes on the gross receipts Aloha Airlines and Hawaiian Airlines derived from the carriage of passengers.

In the present case, however, Kamikawa does *not* seek to assess taxes on the "air transportation" that Lynden contracts to provide to its customers. Rather, Kamikawa argues only that Lynden cannot escape Hawaii's general excise tax on the gross receipts that Lynden receives for ground transportation and other non-air services. We agree with Kamikawa, as we did with his substantially similar contention in *United Parcel Service*, where UPS advanced arguments parallel to those advanced by Lynden here. We, therefore, reject Lynden's characterization of the present action as an attempt by Kamikawa to "unjustly force[ ] Lynden to litigate the same issue [raised in *Aloha Airlines* ]." As explained *infra*, we hold that neither 49 U.S.C. § 40116(b)—nor the Supreme Court's decision in *Aloha Airlines*— bars the State's imposition of general excise taxes on the non-air portion of Lynden's freight forwarding business.

B. *Lynden's Revenues In The Instant Matter Are Not Derived From The Sale Of Air Transportation.*

 This court has previously noted that "Congress' enactment of a provision defining

the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 232, 948 P.2d 1055, 1073 (1997) (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). Additionally, "[i]n all preemption cases, ... we start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

Based on these considerations and the express language of the FAA, we stated in *United Parcel Service*:

> Congress only clearly preempted the States' power to levy taxes on "the sale of air transportation or on the gross receipts derived therefrom." 49 U.S.C. § 1513(a) [recodified as § 40116]; *see also Aloha Airlines*, 464 U.S. at 15 [104 S.Ct. 291] (holding that section 1513(a) preempts State taxation of "gross receipts derived from air transportation or the carriage of persons in air commerce"). In the present case, [Taxpayer] seeks to avoid the imposition of taxes on the gross receipts that it receives for the ground transportation portion of freight that travels partly by air. Because we conclude that such gross receipts do not qualify as "the sale of air transportation or [ ] the gross receipts derived therefrom," we hold that 49 U.S.C. § 1513 does not prevent Kamikawa from assessing taxes under HRS § 239–6 on that portion of [Taxpayer]'s gross receipts.

*United Parcel Service*, at 343, 966 P.2d at 655,

As we held with respect to Hawaii's Public Service Company (PSC) tax in *United Parcel Service*, the plain language of 49 U.S.C. § 40116 similarly does *not* preempt Hawaii's general excise tax statute insofar as the general excise tax applies to gross receipts that are attributable to the ground transportation and other non-air services of Lynden's freight forwarding business. *Cf. Aloha Airlines*, 464 U.S. at 12, 104 S.Ct. 291.

**56**

In support of its contrary interpretation of section 40116, Lynden advances several of the arguments that UPS advanced—and we rejected—in *United Parcel Service.* We therefore restrict our discussion here to those arguments made by Lynden that differ from those previously addressed and rejected, although some overlap is unavoidable.

We first address Lynden's argument that the non-air services it provides are "a necessary and integral part of Lynden's air delivery system" and, as such, fall within the definition of "air transportation." Because nothing in the FAA's definition of "air transportation" supports Lynden's interpretation, we reject it.

The FAA defines "air transportation" to include "interstate air transportation," 49 U.S.C. § 40102(a)(5), which, in turn, is defined as follows:

"Interstate air transportation" means the *transportation of* passengers or *property by aircraft* ...—

(A) between a place in—

(i) a State, territory, or possession of the United States and a place in the District of Columbia or another State, territory, or possession of the United States; [or]

(ii) Hawaii and another place in Hawaii through the airspace over a place outside Hawaii; [and] ...

(B) *when any part of the transportation is by aircraft.*

49 U.S.C. § 40102(a)(25) (emphases added).

Based on the language quoted above, "interstate air transportation" applies *only* to transportation "by aircraft." However, in attempting to convince us that the ground transportation and non-air services it provides are "incidental" to its "air transportation," Lynden argues that it is an "air carrier" and charges its customers under a "single air waybill." As stated in *United Parcel Service,* a taxpayer's corporate structure is not dispositive of the service it provides. *See United Parcel Service,* at 343 n. 6, 966 P.2d at 653 n. 6. Thus, whether or not Lynden is an "air carrier" has no impact on whether States may tax gross receipts that are *not* attributable to "the sale

of air transportation." Moreover, Lynden's emphasis on the fact that "[t]he single fee [charged to customers] is reflected as one single item on the invoice as well as in Lynden's books and records" is irrelevant. The fact that "[t]he fee is not broken down into separate charges for the ground movement of the freight to and from the airplane and for the movement of the freight by airplane" in *no way* affects the State's power to assess taxes on the individual components of the service Lynden provides. If a company's internal billing practices could prevent a State's legitimate taxation of services, it would create havoc in the public treasuries of all fifty states. Moreover, even if we agreed with Lynden's proposition that the ground transportation and non-air services it provides are "incidental" to its "air transportation," the language of the statute simply does not support Lynden's interpretation.

Lynden asserts that the FAA's preemption of State tax statutes, taxing "the sale of air transportation," applies to gross receipts derived from transactions where *"any part of the transportation is by aircraft."* 49 U.S.C. § 40102(a)(25)(B) (emphasis added). We rejected this very contention in *United Parcel Service,* stating:

the structure of section [40102(a)(25) ] ... indicates that the "by aircraft" limitation applies throughout the definition.... The final clause[, which states "when any part of the transportation is by aircraft," merely] indicate[s] Congress' intent to give the Federal Aviation Agency jurisdiction over the 'air transportation' portions of interstate trips whether such trips occur wholly by aircraft, or partly by aircraft and partly by another type of transportation. In this way, the FAA includes intrastate transportation 'by aircraft' where the overall transportation involved is of an interstate nature.

*United Parcel Service,* at 340, 966 P.2d at 652. Unlike Lynden's proffered interpretation, the above interpretation not only gives effect to the plain meaning of the "by aircraft" limitation, it does not lead to absurd results. Under Lynden's interpretation, where *any part* of the transportation occurs

by air, the *entire* transaction falls within section 40102(a)(25)'s definition of "interstate air transportation" and, thus, within section 40116(b)'s preemptive reach. As we did in *United Parcel Service,* we reject such an unbridled reading of the statute.[4]

Further, Lynden's position is not bolstered by Lynden's reliance on many of the same cases considered and distinguished in *United Parcel Service. See, e.g., City of Philadelphia v. Civil Aeronautics Board,* 289 F.2d 770 (D.C.Cir.1961) (allowing freight forwarder to provide trucking service, as opposed to air service, based primarily on language specific to the Certificate issued by the Civil Aeronautics Board); *Federal Express Corp. v. California Public Utilities Comm'n,* 936 F.2d 1075 (9th Cir.1991), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992) (holding that 49 U.S.C. § 1305—a broader preemption statute with very different language—preempted state regulation of Federal Express, *including* its trucking services); *Airborne Freight Corp. v. Department of Taxation and Fin.,* 137 A.D.2d 30, 527 N.Y.S.2d 107 (N.Y.App.Div.1988) (expressly *refusing to decide* New York's argument that it could lawfully impose a tax "on the portion of plaintiffs' gross receipts representing their charges for service which do not involve air transportation"); *Air Polynesia, Inc. v. Dias,* No. 2250 at 2–3 (Haw. Tax App.Ct. May 24, 1985) (noting only that the taxpayer "carries property and mail by aircraft," the court did not discuss whether the taxpayer provided non-air transportation).

Finally, Lynden attacks the State's use of a "formula that multiplies a fraction (made up of Lynden's Hawai'i ground expenses as the numerator and Lynden's total expenses as the denominator) by Lynden's worldwide gross revenues." As previously stated, however, Lynden agreed by stipulation that, if 49 U.S.C. § 40116 did not bar the State from taxing of the ground transportation and other non-air services that Lynden provides, it would not challenge the assessment of $500,-

595.28. We do not, therefore, express an opinion regarding the correctness of the State's calculation by which it arrived at the disputed general excise tax assessment of $500,595.28.

Likewise, we do not consider whether the State correctly attributed receipts between the "air" and "non-air" services provided. However, if that issue were properly presented, we would be troubled by a calculation of general excise taxes that was measured as a proportion of gross receipts derived in part from the sale of "air transportation."

We feel compelled to reiterate that the State may *not* assess taxes against the gross receipts that Lynden, or any other taxpayer, derives from "the sale of air transportation." 49 U.S.C. § 40116(b). HRS § 237–13(6) empowers the State to assess general excise taxes of four percent on service businesses. HRS § 237–21 provides the formula by which the State apportions gross income between Hawai'i and other states in which taxpayers operate. We do not, however, read the language of HRS 237–21 as requiring apportionment *only* with respect to Hawai'i versus nonHawai'i activities, but also where, as here, other laws of the United States require apportionment on different grounds.

Specifically, section 237–21 directs the State to "include[ ] in the measure of the tax *that portion of the gross income* which is derived from activities within the State, *to the extent that apportionment is required by the . . . laws of the United States."* HRS § 237–21 (emphases added). Here, a "law[ ] of the United States," 49 U.S.C. § 40116(b), requires the State to measure gross income *excluding* gross receipts derived from the sale of "air transportation." That is, the State's calculation of general excise taxes must be based *exclusively* on revenues derived from the sale of "non-air" transportation and services.

Accordingly, we hold that the State may assess general excise taxes on only the gross

---

4. Because we believe that the language of 49 U.S.C. §§ 40116(b) and 40102(a)(25) is clear, Lynden's reliance on "other interpretive aids" is not persuasive. Thus, Lynden's foray into *other* statutory provisions removing from the Interstate Commerce Commission jurisdiction over "trans-

portation of property . . . by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier[,]" *see* 49 U.S.C. § 13506(a)(8)(B) (1998), is neither helpful nor necessary.

receipts that Lynden receives for the ground transportation and other non-air services that Lynden provides.

## IV. *CONCLUSION*

Because there is no genuine issue of material fact and the Tax Appeal Court erroneously interpreted the preemptive reach of 49 U.S.C. § 40116, we vacate the decision of the Tax Appeal Court granting Lynden's motion for summary judgment and denying Kamikawa's motion for summary judgment. We remand this case with instructions to the Tax Appeal Court to enter summary judgment in favor of Kamikawa, the Director of Taxation, State of Hawai'i.