ACCEPTED
15-24-00113-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/12/2025 12:38 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00113-CV**

In the Court of Appeals
for the Fifteenth District
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/12/2025 12:38:04 PM
CHRISTOPHER A. PRINE
Clerk

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas,**
*Appellants,*

V.

**American Airlines, Inc.,**
*Appellee.*

On Appeal from the 98th Judicial District Court, Travis County, Texas
Cause Number D-1-GN-16-000621

## Appellants' Reply Brief

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
    General

AUSTIN KINGHORN
Deputy Attorney General for Civil
    Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation
    Division

DEBORAH J. RAO
Assistant Attorney General
State Bar No. 24131915
deborah.rao@oag.texas.gov

ALYSON "ALLY" THOMPSON
Assistant Attorney General
State Bar No. 24143794

Office of the Attorney General
Tax Litigation Division
P.O. Box 12548
Austin, Texas 78711
Tel: 512-475-3503
Fax: 512-478-4013

*Counsel for Appellants*

***Oral Argument Requested***

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................i

INDEX OF AUTHORITIES ..................................................................iii

ARGUMENT ....................................................................................... 1

    I.     The Texas franchise tax is a composite tax. ...........................2

         A.    The Texas Supreme Court held that the Texas franchise tax is imposed on taxable margin. ..................................2

         B.    The Texas franchise tax calculation is the issue. ..........5

         C.    The Texas franchise tax is not levied on total revenue. ......................................................................7

         D.    The Texas franchise tax is a composite tax calculated based on the entire business activities of a taxable entity. ...........................................................................8

    II.    American misunderstands the Texas franchise tax and misinterprets AHTA precedent. ...........................................11

         A.    The Texas franchise tax bears no resemblance to the Texas sales tax. .........................................................12

         B.    The Texas franchise tax bears no resemblance to the AHTA preempted taxes of other states. ......................13

         C.    Neither the purpose nor the effect of the Texas franchise tax is to impose a levy upon the gross receipts of air commerce or air transportation. ..................................17

    III.    There is no evidence or insufficient evidence to support Finding of Fact 8, and the record conclusively proves that there are deductions associated with American's transportation revenues. ......................................................20

A.  The testimonial and documentary evidence American points to is legally insufficient to prove Finding of Fact 8. ........................................................21

B.  The evidence of the composite nature of the Texas franchise tax conclusively establishes the opposite of Finding of Fact 8. .........................................................23

CONCLUSION ..............................................................................26

PRAYER ......................................................................................27

CERTIFICATE OF COMPLIANCE.............................................29

CERTIFICATE OF SERVICE.......................................................29

# INDEX OF AUTHORITIES

**CASES**

*Air Transp. Ass'n of Am. v. New York State Dep't of Tax'n & Fin*,
91 A.D.2d 169 (N.Y. App. Div. 1983) ..............................................14

*Aloha Airlines, Inc. v. Dir. of Tax'n of Hawaii*,
464 U.S. 7 (1983) .................................................................*passim*

*Balloons Over the Rainbow, Inc. v. Dir. of Revenue*,
427 S.W.3d 815 (Mo. 2014)..................................................... 14, 15

*Bullock v. Nat'l Bancshares Corp.*,
584 S.W.2d 268 (Tex. 1979)...............................................................3

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005)..............................................21, 22, 23

*Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*,
430 S.W.3d 384 (Tex. 2014).............................................................6

*Glover v. Tex. Gen. Indem. Co.*,
619 S.W.2d 400 (Tex. 1981)............................................................21

*Hallmark Mktg. Co. v. Hegar*,
488 S.W.3d 795 (Tex. 2016)........................................................4, 8

*Hegar v. Am. Multi-Cinema, Inc.*,
605 S.W.3d 35 (Tex. 2020)...........................................................2, 3

*Hegar v. Gulf Copper & Mfg. Corp.*,
601 S.W.3d 668 (Tex. 2020)......................................................2, 3, 7

*In re Nestle USA, Inc.*,
387 S.W.3d 610 (Tex. 2012)...............................................................3

*Kamikawa v. Lynden Air Freight, Inc.*,
968 P.2d 653 (Haw. 1998) ..........................................................15, 16

*Meritor Auto., Inc. v. Ruan Leasing Co.,*
    44 S.W.3d 86 (Tex. 2001)..................................................................6

*Sunstate Equip. Co., v. Hegar,*
    601 S.W.3d 685 (Tex. 2020)...................................................... 4, 7, 8

*United Servs. Auto. Ass'n v. Strayhorn,*
    124 S.W.3d 722 (Tex. App.—Austin 2003, pet. denied)................13

**STATUTES**

49 U.S.C.:

    § 40116(b)(4) ...............................................................................15

    § 40116(e)................................................................................2, 27

Tex. Gov't Code § 311.021(2) ................................................................6

Tex. Tax Code:

    § 151.051(a)..................................................................................13

    § 171.0002 (2015).................................................................... 12, 13

    § 171.002......................................................................................4

    § 171.002 (2015).......................................................... 2, 7, 12, 13

    § 171.051 ................................................................................ 12, 13

    § 171.101.......................................................................................4

    § 171.101 (2015)..................................................................... *passim*

    § 171.101(a)(1)(A)–(B) (2015) ...............................................23

    § 171.1014..............................................................................12, 13

    § 171.1016 (2015).........................................................................9

iv

## OTHER AUTHORITIES

State Office of Admin. Hearings Dkt. No. 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.26, Comptroller of
  Public Accounts, 2017 WL 3842067 (May 3, 2017) ........................ 12

## ARGUMENT

American Airlines, Inc. ("**American**") seeks to redefine the Texas franchise tax. This is done through an as-applied federal preemption challenge to the Texas franchise tax under the federal Anti-Head Tax Act (the "**AHTA**"). In an attempt to create a tax levied on gross receipts where there is none, American reads portions of the tax in isolation and points to inapplicable case law. American disregards the statutory language of the franchise tax, the application of the tax to American for the year at issue, and the Texas Supreme Court's explanation of the tax.

The Texas franchise tax does not tax total revenue. The tax cannot be broken down by revenue stream and, in turn, cannot tax gross receipts from any isolated revenue stream. The tax is a composite tax imposed on taxable margin, which is calculated, in this and in all instances, by computations based on a taxable entity's business activities as a whole.

As applied to American for Report Year 2015, the Texas franchise tax has a relevant deduction based on American's transportation receipts—compensation. Thus, the Texas franchise tax is not a tax on American's gross transportation receipts because there is a relevant deduction.

1

## I. The Texas franchise tax is a composite tax.

The Texas franchise tax is a composite tax that is levied on taxable margin and calculated based on the entire business activities of a taxable entity. An attempt to calculate the tax due on an isolated revenue source runs afoul of the nature of the tax. In this and every instance, the Texas franchise tax is not a gross receipts tax preempted by the AHTA. Rather, the Texas franchise tax is a permissible "Other Allowable Tax[]" under the AHTA. 49 U.S.C. § 40116(e).

### A. The Texas Supreme Court held that the Texas franchise tax is imposed on taxable margin.

The Texas franchise tax is a composite tax levied on taxable margin. Tex. Tax Code §§ 171.002 (2015), .101 (2015); *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 38 (Tex. 2020); *Hegar v. Gulf Copper & Mfg. Corp.*, 601 S.W.3d 668, 673 (Tex. 2020). Thus, the tax is commonly called the "margin tax." 2 RR 240.

This appeal turns on what comprises the Texas franchise tax. American tries, through a footnote, to dismiss the Texas Supreme Court's review and consistent interpretation of the Texas franchise tax as levied on taxable margin. Appellee's Br. at 18, fn. 6. American claims that "the label applied to the tax is immaterial" and that the Texas Supreme Court

2

cases cited in the Comptroller's opening brief do not address the issues presented in this appeal. *Id.* In actuality, what the Texas Supreme Court discusses in *American Multi-Cinema, Gulf Copper,* and throughout its opinions regarding the franchise tax, goes to the heart of the issue—what the franchise tax is levied on.

In *American Multi-Cinema*, the Texas Supreme Court determined what a movie theater could subtract as part of the "cost of goods sold" deduction method when calculating taxable margin for franchise tax purposes. 605 S.W.3d at 37. In this opinion, the Texas Supreme Court stated the purpose of the Texas franchise tax. *Id.* at 38. The Texas franchise tax "'tax[es]. . . the value of the privilege' to transact business in Texas, which 'confers economic benefits, including the opportunity to realize gross income and the right to invoke the protections of local law.'" *Id.* (citing *In re Nestle USA, Inc.*, 387 S.W.3d 610, 622 (Tex. 2012) (quoting *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex. 1979))).

In *Gulf Copper*, an opinion delivered on the same day as *American Multi-Cinema*, the Texas Supreme Court analyzed the proper application of a revenue exclusion and the taxpayer's inclusion of certain costs in the

"cost of goods sold" deduction method for franchise tax purposes. 601 S.W.3d at 671. The Texas Supreme Court stated that the Texas franchise tax "applies to what the Legislature has denominated 'taxable margin.'" *Id.* at 673 (citing Tex. Tax Code § 171.101). The Texas Supreme Court then laid out the determination of taxable margin and noted in conclusion the effect of the tax: the "entity's tax obligation is a percentage of its taxable margin." *Id.* (citing to Tex. Tax Code § 171.002).

In *Sunstate Equipment Co., v. Hegar*, the Texas Supreme Court again looked to the inclusion of certain costs in the "cost of goods sold" deduction method for franchise tax purposes. 601 S.W.3d 685, 688 (Tex. 2020). The Texas Supreme Court stated that "[t]he franchise tax is levied on a taxable entity's 'taxable margin.'" *Id.* at 690. (citing to Tex. Tax Code § 171.002). The Texas Supreme Court further recognized that the franchise tax "is not a tax on revenue." *Id.*

In *Hallmark Marketing Co. v. Hegar*, the Texas Supreme Court stated that "[i]n its simplest form, franchise-tax liability is calculated by multiplying a business's taxable margin by the applicable franchise-tax rate." 488 S.W.3d 795, 796 (Tex. 2016) (citing to Tex. Tax Code § 171.002).

The Texas Supreme Court has made clear the purpose and the effect of the Texas franchise tax. To the extent that American calls into question the Texas Supreme Court's explanation of the Texas franchise tax as applied to itself, the Comptroller proffers the high court's constant reaffirmation of the franchise tax as levied on a taxable entity's taxable margin as instructive in this matter.

**B.      The Texas franchise tax calculation is the issue.**

American asserts that the Court need not look behind the curtain—that the Comptroller is attempting to "confuse the issue" by "looking at American's entire business, rather than individual revenue sources." Appellee's Br. at 6. That is exactly the issue. American's franchise tax obligation cannot be calculated based on an individual revenue source.

The composite nature of the franchise tax is detailed in the Comptroller's opening brief. Appellants' Br. at 26–36. American does not dispute that the tax is a composite tax. American's comments are that the composite nature of the tax is "irrelevant," that the "only adjustment that the Court needs to consider is the 70% adjustment," and that "the Court can disregard the Comptroller's discussion of the different lines on the franchise tax report." Appellee's Br. at 24, 29, 30, 33.

However, it is well settled that the rules of statutory interpretation require a court to "examine the entire act to glean its meaning" and to "presume that 'the entire statute is intended to be effective.'" *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) (quoting Tex. Gov't Code § 311.021(2)). Moreover, a court may not interpret a statute in a way that renders any part of it meaningless. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014).

The parties agree that the nature of the Texas franchise tax is at the center of this dispute. *See* Appellee's Br. at 7, 8, 21, 31, 32. American's notions that the "only adjustment that the Court needs to consider is the 70% adjustment" and that "the Court can disregard the Comptroller's discussion of the different lines on the franchise tax report" run counter to determining the nature of the tax. *Id.* at 24, 30. Accepting American's proposition that looking at the tax as a whole is "irrelevant" equates to interpreting specific statutory provisions in isolation, leads to the exclusion of relevant statutory language, and renders the franchise tax calculation meaningless. *Id.* at 29, 33.

## C. The Texas franchise tax is not levied on total revenue.

The Texas franchise tax "is not a tax on revenue." *Sunstate Equip. Co.*, 601 S.W.3d at 690. However, American concludes that "if 'total revenue' includes the AHTA revenues, the Texas franchise tax is a tax on American's gross receipts from air transportation or air commerce, and it violates the AHTA." Appellee's Br. at 16. American asserts that "American's 'total revenues' from the AHTA revenues are identical to its 'gross receipts' from those sources." *Id.* at 15. Regardless of what comprises American's total revenue, the Texas franchise tax is not levied on a taxpayer's total revenue. *See Sunstate Equip. Co.*, 601 S.W.3d at 690.

Even according to American's own representation of the Texas franchise tax calculation, determining total revenue is only "Step 1" of the calculation. Appellee's Br. at 14. This is followed by "Step 2," in which the selection of a margin deduction method occurs, and a "Step 3," in which the application of the apportionment factor occurs. *Id.* The Texas franchise tax is levied on a taxpayer's taxable margin, which is only determined after American's "Step 3." Tex. Tax Code §§ 171.002 (2015), .101 (2015); *Gulf Copper & Mfg. Corp.*, 601 S.W.3d at 673; *Sunstate*

*Equip. Co.*, 601 S.W.3d at 690; *Hallmark Mktg. Co.*, 488 S.W.3d at 796; Appellee's Br. at 14.

American represents that the inclusion of the revenue streams of baggage fees, passenger ticket sales, and freight transportation in total revenue for Texas franchise tax calculation equates to a tax imposed on the gross receipts from those revenue sources. Appellee's Br. at 16. This assertion finds no support from the language or structure of the tax, much less from the Texas Supreme Court's reading of the tax.

**D.    The Texas franchise tax is a composite tax calculated based on the entire business activities of a taxable entity.**

The composite nature of the Texas franchise tax is shown throughout the calculation of the tax. When determining taxable margin, a review of the taxable entity as a whole is required to ascertain margin. This is displayed on Lines 19–23 of the Texas Franchise Tax Report form.

**MARGIN**  *(Whole dollars only)*
**19. 70% revenue** *(item 10 x .70)*

**20. Revenue less COGS** *(item 10 - item 14)*

**21. Revenue less compensation** *(item 10 - item 18)*

**22. Revenue less $1 million** *(item 10 - $1,000,000)*

**23. MARGIN** *(see instructions)*

4 RR 21 (PX 4). The 70 percent adjustment method is only one of the four calculations that are required under Texas Tax Code section 171.101 for

every taxable entity except a small taxable entity that elects the E-Z computation under Tax Code section 171.1016. Appellants' Br. at 6, 17, 19–25, 32. One calculation that cannot be disregarded as irrelevant is "[r]evenue less compensation." 4 RR 21 (PX 4).

The composite nature of the tax is also shown in the determination of revenue. This is displayed on Lines 1–10 of the Texas Franchise Tax Report form.

**REVENUE** *(Whole dollars only)*
1. **Gross receipts or sales**
2. **Dividends**
3. **Interest**
4. **Rents** *(can be negative amount)*
5. **Royalties**
6. **Gains/losses** *(can be negative amount)*
7. **Other income** *(can be negative amount)*
8. **Total gross revenue** *(Add items 1 thru 7)*
9. **Exclusions from gross revenue** *(see instructions)*
10. **TOTAL REVENUE** *(item 8 minus item 9 if less than zero, enter 0)*

4 RR 20 (PX 4). These numbers can be net numbers that include reductions in certain expenses and losses, rather than gross numbers. Appellants' Br. at 27–32. The numbers may even be negative such that the line items completely offset one another. For that reason, the instructions for Line 10 indicate that total revenue cannot be less than zero. 4 RR 20 (PX 4). Individual revenue streams cannot be isolated in the calculation.

The composite nature of the tax is further shown in the determination of the apportionment factor when calculating taxable margin. This is displayed on Lines 24–26 of the Texas Franchise Tax Report form.



4 RR 21 (PX 4). The revenue from each individual transaction is included in the "total revenue" of the taxable entity, which is then apportioned to Texas based on the ratio of the taxable entity's gross receipts from business done in this state to the taxable entity's gross receipts from its entire business. 4 RR 20–21 (PX 4); *see* 2 RR 246. Revenue from each individual transaction is not apportioned to Texas based on the extent to which the revenue from the individual transaction is attributable to Texas. Appellants' Br. at 33–35.

When a revenue stream is removed from the franchise tax calculation, it changes the apportionment factor and the franchise tax calculation for the entity as a whole. 2 RR 105, 158, 164–65; 3 RR 46–47. For this reason alone, the franchise tax cannot be calculated on

individual revenue streams, as American attempts to do for transportation revenues. 4 RR 84 (PX 6).

Additionally, the composite nature of the tax is shown in the determination of the tax rate. This is displayed on Line 30 of the Texas Franchise Tax Report form.

**TAX DUE**
**30. Tax rate** (see instructions for determining the appropriate tax rate)

4 RR 21 (PX 4). The form says to "see instructions" because the tax rate may vary depending upon the nature and size of the entire business. Appellants' Br. at 35–36. Again, the tax cannot be calculated on an individual revenue stream without consideration of the entire business.

## II. American misunderstands the Texas franchise tax and misinterprets AHTA precedent.

American contends that the application of the AHTA to the Texas sales tax and other states' applications of the AHTA is instructive on how to apply the AHTA to the Texas franchise tax. Appellee's Br. at 10–12, 20–22. American asserts that this AHTA precedent applies because "generally applicable taxes were preempted because they constituted gross-receipts taxes." *Id.* However, the Texas franchise tax is not a tax that is generally applicable on an isolated revenue stream basis.

11

The Texas franchise tax is not a "gross-receipts tax[] of general applicability," in the way American has coined the term. *Id.* at 20. The Texas franchise tax is a tax generally applicable to businesses operating in Texas and is imposed on the activities of the entire business. Tex. Tax Code §§ 171.0002 (2015), .002 (2015), .051, .101 (2015), .1014. The tax is not imposed on the basis of items, transactions, or revenue streams as to be a tax of general applicability as to specific items, transactions, or revenue streams.

## A. The Texas franchise tax bears no resemblance to the Texas sales tax.

American's contention that this Court should draw a comparison to a tax that, by its nature, does not act in purpose or effect like the Texas franchise tax, is unavailing. American claims that the Comptroller's decision that the AHTA preempted the Texas sales tax as applied to skydiving jumps is instructive in this matter. Appellee's Br. at 7, 11, 13, 16, 21, 23 (referencing State Office of Admin. Hearings Dkt. No. 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.26, Comptroller of Public Accounts, 2017 WL 3842067 (May 3, 2017)). This claim by American is based on the premise that the "AHTA preempts gross-receipts taxes of general applicability to the extent they seek to tax air commerce or air transportation." Appellee's Br. at 20.

The Texas sales tax is a tax established by the state of Texas; that is where its likeness to the Texas franchise tax ends. The only Texas tax that has been called "a tax of general applicability" by a court in this state is the sales tax. The Third Court of Appeals in *United Services Auto. Ass'n v. Strayhorn* stated that "[t]he sales tax is a tax of general applicability, imposed on the *sale of each taxable item* in this state" 124 S.W.3d 722, 730 (Tex. App.—Austin 2003, pet. denied) (emphasis added) (citing to Tex. Tax Code § 151.051(a)). In its current form, the Texas franchise tax is not a tax imposed on the sale of each taxable item in the state; rather, it is a composite tax based on a taxpayer's entire business activities and imposed on an entity's taxable margin. Tex. Tax Code §§ 171.0002 (2015), .002 (2015), .051, .101 (2015), .1014.

**B. The Texas franchise tax bears no resemblance to the AHTA preempted taxes of other states.**

The parties agree that "[t]he preemption analysis requires looking at whether the tax imposed on air commerce or air transportation is 'measured by gross receipts.'" Appellee's Br. at 13 (citing *Aloha Airlines v. Dir. of Tax'n of Hawaii*, 464 U.S. 7, 14 (1983)). However, American dwells upon the Comptroller's position that *Aloha Airlines* is the guiding case on how to review a state tax for AHTA preemption. American does

not take issue with the validity of the purpose and effect test that *Aloha Airlines* provides, or with the Comptroller looking to United States Supreme Court precedent regarding the AHTA. Rather, American requests this Court look at how courts of other states have classified taxes that, in neither purpose nor effect, act as the Texas franchise tax does. Appellee's Br. at 10, 12, 16, 21, 22, 32.

First, American points to *Air Transport Ass'n of America v. New York State Department of Taxation & Finance*, in which the subject tax stated a corporation "shall pay a franchise tax which shall be equal to three-quarters of the one per centum upon its gross earnings from all sources within this state." 91 A.D.2d 169, 170 (N.Y. App. Div. 1983). The New York tax was imposed on gross earnings, could be broken down by revenue stream, and resulted in a tax imposed on gross receipts as to revenues from air transportation. *Id.* at 170–72. The Texas franchise tax is not imposed on gross earnings, cannot be broken down by revenue stream, and does not result in a tax on gross receipts. *See infra* Section I.

Next, in *Balloons Over the Rainbow, Inc. v. Director of Revenue*, the subject tax was imposed on "all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable

service at retail in this state" and was "equivalent to four percent of the amount paid for admission and seating, accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." 427 S.W.3d 815, 820 (Mo. 2014). The Missouri Supreme Court stated: "Balloons is disputing state taxes levied on the *gross receipts* of its hot air balloon rides . . . ." *Id.* at 820–21 (emphasis in original). The Missouri Supreme Court then turned to the question actually before it, "whether the AHTA prohibits states from taxing the sale of untethered hot air balloon rides." *Id.* at 821. Thus, the Missouri Supreme Court was not answering the question of the applicability of the exclusionary provision of the AHTA. *See id.* at 820–21; 49 U.S.C. § 40116(b)(4). Rather, the nature of the state tax at issue was already established as a tax imposed on gross receipts.

Finally, American points to *Kamikawa v. Lynden Air Freight, Inc.*, in which the Supreme Court of Hawaii answered the question of whether "Hawaii's general excise tax statute—as it applies to that portion of gross receipts that Lynden receives for the ground transportation and other non-air services of its freight forwarding business" was preempted by the AHTA. 968 P.2d 653, 654 (Haw. 1998). The subject tax used a formula of

15

the entity's worldwide revenue multiplied by the result of the entity's ground cost in the state divided by the entity's worldwide costs to reach what was to be "taxable gross receipts." *Id.* at 655. The Supreme Court of Hawaii explained that "by including only ground-related costs, the State attempts to avoid taxing the air service that Lynden provides to its customers." *Id.*

The Supreme Court of Hawaii noted that the AHTA "preempts the State's ability to assess general excise taxes on revenues derived from the sale of air transportation." *Id.* at 656 (internal citation omitted). The Supreme Court of Hawaii then held that "the State may assess general excise taxes on that portion of the gross receipts that Lynden receives for ground transportation and other non-air services it provides." *Id.* Thus, the state of Hawaii crafted and applied the excise tax to be broken down by revenue stream, apportioned only the revenue stream that could be taxed, and imposed a tax on the gross receipts of that taxable revenue stream. The apportionment factor of the Texas franchise tax calculation cannot be determined by individual revenue stream. *See infra* Section I.D. When a revenue stream is removed from the Texas franchise

16

tax calculation, it changes the apportionment factor and the franchise tax calculation for the entity as a whole. *See id.*

The Texas franchise tax is not imposed on the gross receipts of a business, gross receipts tied to a specific revenue stream, or otherwise. Rather than being a tax on gross earnings, amount paid, or gross receipts, the Texas franchise tax is levied on taxable margin. *See id.* at Section I. Taxable margin is determined by the entire business activities of a taxable entity when determining which deduction method is used, how to apportion the tax to Texas, and what other deductions may apply. *See id.* The entire business activities of the taxable entity are again looked at to determine total revenue and to select what tax rate to apply. *See id.* Thus, the Texas franchise tax is a composite tax that, in neither purpose nor effect, acts as the taxes American has referenced as preempted by the AHTA.

**C.  Neither the purpose nor the effect of the Texas franchise tax is to impose a levy upon the gross receipts of air commerce or air transportation.**

American conflates the Comptroller's explanation and comparison between the Texas franchise tax and the tax at issue in *Aloha Airlines*, a Hawaii tax that imposed a special tax on the airline business. Appellee's

Br. at 11–13, 19–22; *Aloha Airlines*, 464 U.S. at 10. Presumably, this is because the Comptroller states in its opening brief that "the Texas franchise tax applies uniformly to all taxable entities" and the "purpose and effect of the Texas franchise tax is not to impose a levy upon the gross receipts of airlines." Appellants' Br. at 13, 15. American describes this as the Comptroller taking the position that "the Texas franchise tax is not preempted because it is not specifically directed at air commerce or air transportation." Appellee's Br. at 6. However, the Comptroller has not taken that position.

The Comptroller's opening brief already directly quotes the language of the rule from *Aloha Airlines* that "the 'manner in which the state legislature has described and categorized [the tax provision] cannot mask the fact that the purpose and effect of the [tax] provision is to impose a levy upon the gross receipts of airlines.'" Appellants' Br. at 14 (citing *Aloha Airlines*, 464 U.S. at 13–14). The Comptroller's opening brief further discusses the effect portion of the test, in which the effect of a tax is reviewed to see if it imposes a levy upon the gross receipts of airlines. *Id.* at 15–16.

However, to the extent clarification is necessary, the Comptroller's position is that the application of the purpose and effect test of the United States Supreme Court in *Aloha Airlines* is the only binding precedent on this Court specifically regarding AHTA preemption. Further, for the reasons stated throughout both the Comptroller's opening brief and this brief, the Texas franchise tax acts in neither purpose nor effect like any of the taxes of other states that other state courts have analyzed. *See infra* Section II.B.

The state taxes preempted by the AHTA that American has offered as instructive in this matter are either a direct tax on gross receipts from air commerce or air transportation or an indirect tax on gross receipts from air commerce or air transportation because the tax could be broken down by revenue stream and result in a levy on gross receipts. The Texas franchise tax is not, in purpose nor effect, a direct tax on air commerce or air transportation and is not a tax of "general applicability" that can be broken down on a revenue stream basis and then applied to gross receipts from an isolated revenue stream.

**III. There is no evidence or insufficient evidence to support Finding of Fact 8, and the record conclusively proves that there are deductions associated with American's transportation revenues.**

As the Comptroller explains in its opening brief beginning at 19, this case can be resolved on the lack of evidentiary support for Finding of Fact 8:

> 8. There are no deductions or exclusions from American's revenues from passenger ticket sales, passenger baggage fees, and freight transportation. American would pay the franchise tax on 70% of the gross receipts from those sources that are apportioned to the State of Texas.

2 CR 547; Appellants' Br. at App. 2. American's theory is that the franchise tax is a gross receipts tax on transportation receipts because there are no deductions related to transportation expenses. *See* Appellee's Br. at 4 ("key finding"), 5 ("[b]ased on that finding"), 20 ("therefore"), 25 ("underpins"), 27 ("The Court's analysis of the issues must therefore be based on Finding of Fact 8."), 34 (Conclusion). If Finding 8 lacks sufficient evidentiary support, American loses.

The procedure is for the Court to first consider the legal sufficiency of the evidence. If the Court finds that the evidence is legally insufficient, it should not address the factual sufficiency unless the Supreme Court reverses on legal sufficiency and remands the case for a determination of

factual sufficiency. *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981).

## A. The testimonial and documentary evidence American points to is legally insufficient to prove Finding of Fact 8.

American responds to the Comptroller's evidentiary challenge with only two citations to the evidence. Appellee's Br. at 26. This evidence fails the legal sufficiency test because it is no more than a mere scintilla. *See City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005).

The first cited evidence consists of the testimony of American's witness, Patrick Smith:

> Q: Okay. Mr. Smith, were there any—*going back to the calculation* of the franchise tax imposed on bag fees and other transportation items, in that top number where it shows the total receipts from baggage fees and if you also included ticket sales and freight transportation, are there any deductions or exclusions made from those specific buckets of gross receipts?
>
> A: There are not, no. *It's* based on 100 percent of those gross receipts.

2 RR 80–81 (emphasis added); Appellee's Br. at 26.

Testimony that American *took no deductions* on its tax report is not evidence that there *were no deductions available*. In fact, despite repeated requests, Mr. Smith never stated that American actually made the comparison between the margin computation methods to confirm

21

that the 70 percent adjustment method resulted in a lower margin than the compensation deduction method for Report Year 2015. 2 RR 93–102. In context, Mr. Smith's testimony is legally insufficient to prove Finding of Fact 8. *See City of Keller*, 168 S.W.3d at 811–12.

The second cited testimony is Teresa Bostick's reference to her previous deposition testimony:

> Q: Okay. But you have admitted, previously under oath, that you are not aware of any deductions or exclusions specifically from American's revenue from passenger freight, cargo, or baggage with respect to its franchise tax calculation. Do you recall that?
>
> A: That is what you showed me, yes.

2 RR 209; Appellee's Br. at 26. Even if Ms. Bostick had testified at trial that she was *unaware of any deductions*, that testimony would still be insufficient to prove *there were no deductions available*. Furthermore, at trial, Ms. Bostick testified that her previous testimony was mistaken:

> Q: Ms. Bostick, again, you're not aware of any deductions or exclusions specifically from revenues from passenger ticket sales, freight transportation, or baggage fees that feed into the franchise tax calculation. Correct?
>
> A: I cannot answer that.
>
> Q: Okay. I believe you did previously.
>
> A: I would have been incorrect.

2 RR 189. Ms. Bostick later testified:

> Q: Okay. And let's talk about compensation for a minute. Now, Plaintiff's lawyers were asking you, are there any expenses that are related to transportation receipts. Are there?
>
> A: Compensation would be.

2 RR 243. American had the compensation deduction method available to it as part of the tax calculation. *See* Appellants' Br. at 19–24. In context, Ms. Bostick's previous deposition testimony, specifically as clarified by her trial testimony, is legally insufficient to prove Finding of Fact 8. *See City of Keller*, 168 S.W.3d at 811–12.

## B. The evidence of the composite nature of the Texas franchise tax conclusively establishes the opposite of Finding of Fact 8.

Furthermore, Finding of Fact 8 fails the legal sufficiency test because the evidence conclusively proves the contrary. *See id.* at 810, 814. When American calculated its Texas franchise tax liability, it failed to account for the mechanics of the tax that *requires* a comparison of the four computation methods when computing margin. Tex. Tax Code § 171.101(a)(1)(A)–(B) (2015). If revenue is reduced, the margin value obtained from the 70 percent adjustment method is also reduced, and a new comparison is required. Appellants' Br. at 19–25; 2 RR 244.

As explained in the Comptroller's opening brief, American is in a Catch-22 situation. Appellants' Br. at 19–25. If American excludes transportation revenues under the AHTA on the theory that the transportation revenues have no associated deductions in the Texas franchise tax calculation, then the 70 percent adjustment method on the remaining revenue is reduced in value such that the compensation deduction method produces a lower margin. But, if the compensation deduction method produces the lower margin, then American indisputably has a deduction associated with its transportation revenues, and it cannot exclude its transportation revenues under its AHTA preemption theory.

American alleges that there are two fatal flaws in the Catch-22. First, American alleges that the Catch-22 is "internally inconsistent." Appellee's Br. at 29. But that is exactly the point—American cannot have it both ways. American cannot claim transportation revenues should be excluded from the tax calculation by arguing that there are no deductions based on transportation revenues in the tax calculation when the exclusion of transportation revenues from the tax calculation results in

24

the application of a deduction based on transportation revenues—compensation.

The second alleged flaw is that "the entire exercise of the alternative calculation is irrelevant. The question before the Court is not what would happen if the AHTA revenues are not included in the franchise tax calculation." Appellee's Br. at 29–30. But that is exactly the question. The Court must determine what refund American gets if transportation revenues are not included in the Texas franchise tax calculation. That calculation puts American in a Catch-22.

American's assertion that a Texas franchise tax refund can be determined based on an isolated revenue stream finds no basis in the language or structure of the tax. *See infra* Section I. The tax calculation to determine American's requested refund would result in the removal of American's transportation revenues from a calculation with the rest of American's revenues, accompanied by a deduction tied directly to transportation revenues—compensation. 4 RR 97 (PX 7); 3 RR 52.

There is no Catch-22 if the Court recognizes that compensation is always an element of the franchise tax computation, even if it does not produce the lowest margin. The nature of the franchise tax itself

conclusively proves that Finding of Fact 8 is wrong. The Texas franchise tax must be calculated from a taxpayer's entire business activities, including the four deductions that result in margin, one of which is compensation.

## CONCLUSION

There is no precedent for an as-applied AHTA preemption challenge limited to a particular taxpayer, for a particular year, for a particular application of a composite tax that taxes the taxpayer's entire business activities. Under American's as-applied theory, the preemption would not apply to another airline if the airline took the compensation deduction. The preemption might not even apply to American for a different report year depending upon its compensation expense.

For all taxpayers for all report years, the Texas franchise tax is a composite tax that is levied on taxable margin. The Texas franchise tax is not a tax on total revenue or gross receipts. In this and all instances of American's franchise tax computation, the imposition of the tax is on the business activities of the business as a whole, not on gross receipts from an isolated revenue stream. Notably, Line 21 of the Texas Franchise Tax

Report form—"Revenue less compensation"—applies to all taxpayers for all taxable years.

Furthermore, even under American's as-applied theory for Report Year 2015, the Texas franchise tax was not a gross receipts tax with no adjustments related to transportation receipts. It was a permissible "Other Allowable Tax[]" under section 40116(e) of the AHTA, specifically a "franchise tax[]," not just in name, but also in application. 49 U.S.C. § 40116(e). Therefore, American improperly excluded from revenue over $36 billion in passenger and freight revenue when it filed its original return. Appellants' Br. at App. 19, 21; RR PX 19; 4 RR 82 (PX 6); 2 RR 104. The inclusion of American's transportation revenues in the franchise tax calculation for Report Year 2015 results in additional tax due in the amount of $1,802,668.33.

## PRAYER

The Comptroller respectfully requests the Court reverse the trial court's judgment, grant the Comptroller's counterclaim, and render judgment of $1,802,668.33 for additional franchise tax due to Texas.

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation
Division

/s/ Deborah J. Rao
**DEBORAH J. RAO**
Assistant Attorney General
State Bar No. 24131915
deborah.rao@oag.texas.gov
**ALYSON "ALLY" THOMPSON**
Assistant Attorney General
State Bar No. 24143794
ally.thompson@oag.texas.gov
Office of the Attorney General
Tax Litigation Division MC 029
P.O. Box 12548
Austin, Texas 78711-2548
Tel: 512-475-3503
Fax: (512) 478-4013
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief is computer-generated containing 5,786 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

## CERTIFICATE OF SERVICE

I certify that on May 12, 2025, a copy of the foregoing document was served on all parties or attorneys of record via the service methods listed below.

***Via Electronic Service and/or email:***

Mary A. McNulty
Mary.McNulty@hklaw.com
Leonora Meyercord
Lee.Meyercord@hklaw.com
Richard B. Phillips, Jr.
Rich.Phillips@hklaw.com

Holland & Knight, LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel: 214-964-9500
Fax: 214-964-9501

*Counsel for Appellee*

/s/ *Deborah J. Rao*
DEBORAH J. RAO
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Neuman on behalf of Deborah Rao
Bar No. 24131915
david.neuman@oag.texas.gov
Envelope ID: 100712452
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Reply Brief
Status as of 5/12/2025 12:44 PM CST

Associated Case Party: AMERICAN AIRLINES, INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 5/12/2025 12:38:04 PM | SENT |
| Leonora Meyercord | 24074711 | Lee.Meyercord@hklaw.com | 5/12/2025 12:38:04 PM | SENT |
| Mary McNulty | 13839680 | Mary.McNulty@hklaw.com | 5/12/2025 12:38:04 PM | SENT |
| Meghan McCaig | | meghan.mccaig@hklaw.com | 5/12/2025 12:38:04 PM | SENT |

Associated Case Party: GLENN HEGAR COMPTROLLER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kyle PierceCounce | | kyle.counce@oag.texas.gov | 5/12/2025 12:38:04 PM | SENT |
| Alyson "Ally" Thompson | | ally.thompson@oag.texas.gov | 5/12/2025 12:38:04 PM | SENT |
| Deborah Rao | | Deborah.Rao@oag.texas.gov | 5/12/2025 12:38:04 PM | SENT |