**Affirmed and Opinion filed April 9, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00113-CV

**KELLY HANCOCK, ACTING COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellants**

**V.**

**AMERICAN AIRLINES, INC., Appellee**

**On Appeal from the 98th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-16-000621**

## OPINION

In this franchise-tax case, American Airlines, Inc. ("American") argues that the federal Anti-Head Tax Act ("AHTA") preempts the Texas franchise tax as applied to American's revenues from baggage fees, passenger ticket sales, and freight transportation (the "transportation revenues"). *See* 49 U.S.C. § 40116(b)(4)

(prohibiting state taxes on the gross receipts from air commerce or transportation).[1] In response, the Texas Comptroller argues the franchise tax is a composite tax based on a taxable entity's entire business, and, therefore, cannot be determined based on isolated revenue streams. This as-applied federal preemption challenge to the Texas franchise tax is an issue of first impression.

We conclude that the AHTA preempts the franchise tax as applied to American's transportation revenues in its 2015 franchise-tax report. Accordingly, we affirm the trial court's judgment granting American a refund for the amount of franchise tax it paid on its baggage fee revenue and denying the Comptroller's counterclaim seeking to tax all of American's transportation revenues.

## BACKGROUND

### I.    The Texas Franchise Tax

This appeal requires an understanding of how the Texas franchise tax operates. The franchise tax "is imposed on the privilege of doing business in [Texas]." *Hegar v. Gulf Copper & Mfg. Corp.*, 601 S.W.3d 668, 673 (Tex. 2020). It is "levied on a taxable entity's 'taxable margin.'" *See Sunstate Equip. Co., LLC v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020) (quoting Tex. Tax Code § 171.002).[2]

To pay the franchise tax, a taxable entity must file an annual franchise-tax report with the Comptroller containing the financial information necessary to calculate its franchise-tax liability. Tex. Tax Code. § 171.202(a). The calculation begins with the entity's "total revenue," which is "derived by adding together

---

[1] The parties do not dispute that American's transportation revenues are receipts from "air commerce or transportation."

[2] Unless otherwise noted, all references to the Texas Tax Code refer to the version in effect for the 2015 franchise-tax report year. A "report year" refers to the year a franchise-tax report is due, but the report contains financial information from the prior fiscal year.

select amounts reportable as gross income on a federal tax return, subtracting bad debts and other items included on the federal return, and excluding receipts associated with various transactions." *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 93 (Tex. 2017) (citing Tex. Tax Code §§ 171.101(a), .1011).

Once total revenue is determined, the entity must subtract the greater of four alternatives: (1) cost of goods sold ("COGS"); (2) compensation; (3) thirty percent of total revenue (the "seventy percent margin adjustment"); or (4) one million dollars. Tex. Tax Code § 171.101(a)(1). This subtraction yields the entity's "margin." *Id.* In its 2015 franchise-tax report, American used the seventy percent margin adjustment to calculate its margin.

The entity must then apportion its margin to Texas by multiplying its margin by an "apportionment factor." The apportionment factor equals the percentage of the entity's gross receipts from its Texas business divided by the gross receipts from its entire business. *Id.* §§ 171.101(a)(2), .106(a). This calculation yields the entity's "apportioned margin." *Id.* The entity's "taxable margin" equals its apportioned margin less any other allowable deductions. *Id.* § 171.101(a)(1)–(3). Finally, the entity calculates its franchise-tax liability by applying the applicable tax rate to its taxable margin. *Id.* §§ 171.002, .0023, .1016.

## II.    Procedural Background

American is a global airline headquartered in Fort Worth, Texas. It operates a fleet of approximately 1,000 aircraft domestically and internationally. In 2014, American filed its franchise-tax report under protest, contending that the AHTA preempted the franchise tax as applied to American's receipts from its transportation revenues. Subsequently, the Comptroller requested an opinion from the United States Department of Transportation ("DOT")—the federal agency responsible for administering the AHTA—that the AHTA did not preempt the

franchise tax as applied to American's transportation revenues. The DOT disagreed with the Comptroller's position. Thereafter, the Comptroller refunded American the franchise tax it paid on its transportation revenues for report year 2014.

In 2015, American filed its franchise-tax report under protest based on the same AHTA preemption argument it made the prior year. American's protest concerned approximately $1 billion of baggage fee revenue it included in its 2015 report. Subsequently, American filed a refund suit for $107,577.04 attributable to the inclusion of its baggage fee revenue. In response, the Comptroller counterclaimed to recover $1,802,668.83 in additional franchise tax, arguing that American should have included an additional $36 billion of revenue from passenger ticket sales and freight transportation.

Following a bench trial, the trial court rendered judgment for American on its refund claim, awarding American $107,577.04 plus interest, and denied the Comptroller's counterclaim. The trial court found that the franchise tax, as applied to American's transportation revenues, is a tax on gross receipts because "[t]here are no deductions or exclusions" from those revenue sources. It also found that "American would pay the franchise tax on 70% of the gross receipts from those sources that are apportioned to the State of Texas." Thus, the trial court concluded that the AHTA preempts the franchise tax as applied to American's transportation revenues "because it is an impermissible tax on 'gross receipts' from 'air commerce or air transportation.'" *See* 49 U.S.C. § 40116(b)(4). This appeal followed.

## STANDARD OF REVIEW

We review questions of federal preemption and statutory construction de novo. *Texas Mut. Ins. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020); *Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020). We defer to the trial court's findings of fact if supported by legally and factually sufficient evidence. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

Evidence is legally insufficient to support a finding when "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 640 (Tex. 2023). We review the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

In a factual sufficiency review, we consider all the evidence and set aside a finding "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Additionally, the trier of fact is the sole judge of the weight and credibility of witness testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## ANALYSIS

The Comptroller raises two issues on appeal, one legal and one factual. First, he argues that the AHTA does not preempt the State from requiring

American to include its transportation revenues in the Texas franchise-tax calculation. In the Comptroller's view, the franchise tax is not a tax on gross receipts from air commerce or transportation because it is a composite tax levied on taxable margin and calculated based on a taxable entity's entire business, not isolated revenue streams. Second, the Comptroller argues that even if revenue streams could be isolated, there is insufficient evidence supporting the trial court's finding that no deductions or exclusions applied to American's baggage fee revenue. Before addressing the Comptroller's arguments, we first discuss the AHTA's preemptive scope.

## I.    Preemption under the AHTA

In 1970, Congress passed the Airport and Airway Development Act to assist states and localities "in expanding and improving the nation's air transportation system." *See Aloha Airlines, Inc. v. Dir. of Tax'n of Haw.*, 464 U.S. 7, 8 (1983) (citing Pub. L. 91–258, 84 Stat. 219). That same session, Congress established the Airport and Airway Trust Fund "to funnel federal resources to local airport expansion and improvement projects." *Id.* at 8–9 (citing Pub. L. 91–258, § 208, 84 Stat. 236, 250–252). The Trust Fund revenues derived from "several federal aviation taxes, including an 8% tax on domestic airline tickets, a $3 head tax on international flights out of the United States, and a 5% tax on air freight." *Id.* at 9.

Subsequently, "the question arose whether States and municipalities were still free to impose additional taxes on airlines and air travelers." *Id.* The United States Supreme Court held that the Airport and Airway Development Act did not preclude states and localities from assessing head taxes on passengers boarding flights at state airports. *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines*, 405 U.S. 707, 721 (1972). Following that decision, Congress intervened and determined that "the proliferation of local taxes burdened interstate air

6

transportation, and, when coupled with the federal Trust Fund levies, imposed double taxation on air travelers." *Aloha Airlines*, 464 U.S. at 9. To address these concerns, Congress enacted the AHTA. *Id.* at 9–10.[3]

Under the AHTA, a state "may not levy or collect a tax, fee, head charge, or other charge on . . . the gross receipts from" air commerce or transportation. 49 U.S.C. § 40116(b)(4).[4] States, however, may still levy or collect "taxes (except those taxes enumerated in subsection (b) of [Section 40116]), including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services." *Id.* § 40116(e)(1).

Although the AHTA permits those taxes, a state cannot disguise an impermissible gross-receipts tax simply by giving it the label of a permissible tax, a practice that led courts to address the preemptive scope of the AHTA. For example, in *Aloha Airlines*, the United States Supreme Court discussed whether the AHTA preempted Hawaii's property tax equaling four percent of the yearly gross income of airline businesses. 464 U.S. at 10. There, the Court held that the AHTA's plain language prohibited "state taxes imposed on or measured by the gross receipts of airlines." *Id.* at 14, n.10. Additionally, the Court held that Hawaii's categorization of the tax as a "property" tax—rather than a "straight-forward gross receipts tax"—did not "mask the fact that the purpose and effect of

---

[3] The AHTA originated as Section 7(a) of the Airport Development Acceleration Act of 1973. *Aloha Airlines*, 464 U.S. at 9–10 (citing Pub. L. 93–44, § 7(a), 87 Stat. 88, 90). Congress codified Section 7(a) into 49 U.S.C. § 1513. *Id.* In 1994, Congress recodified Section 1513 as 49 U.S.C. § 40116, the current version of the AHTA. Act of July 5, 1994, Pub. L. No. 103–272, § 1, 108 Stat. 745, 1111 (codified at 49 U.S.C. § 40116).

[4] The AHTA does not define "gross receipts." As defined by Black's Law Dictionary, "gross receipts" means "[t]he total amount of money or other consideration received by a business taxpayer for goods sold or services performed in a taxable year, before deductions." *Gross Receipts*, BLACK'S LAW DICTIONARY (12th ed. 2024). Similarly, a "gross-receipts tax" is "[a] tax on a business's gross receipts, without a deduction for costs of goods sold, or allowance for expenses and deductions." *Tax*, BLACK'S LAW DICTIONARY (12th ed. 2024).

the [tax was] to impose a levy upon the gross receipts of airlines," thus making it "at least an 'indirect'" tax on such receipts. *Id.* at 13–14 (quoting 49 U.S.C. § 1513(a)).[5] Therefore, the Court held that the AHTA preempted Hawaii's property tax as applied to the "gross receipts derived from air transportation or the carriage of persons in air commerce." *Id.* at 14.

The *Aloha Airlines* court cited with approval an earlier New York state court decision addressing whether the AHTA preempted a New York franchise tax imposed specifically on aviation corporations. *Id.* at 14–15 (citing *Air Transp. Ass'n of Am. v. New York State Dep't of Tax'n and Fin.*, 91 A.D.2d 169 (App. Div.), aff'd, 59 N.Y.2d 917, cert. denied, 464 U.S. 960 (1983)). There, the tax equaled three-quarters of one percent of an airline's "gross earnings" from in-state sources. *Air Transp.*, 91 A.D.2d at 170. The "gross earnings" calculation included various components in addition to "gross receipts from the sale of air coverage." *Id.* The New York court held that the AHTA preempted the tax "*insofar as* gross earnings [were] measured by gross receipts from air carriage." *Id.* at 172 (emphasis added).

Fifteen years later, the Supreme Court of Hawaii analyzed whether the AHTA preempted Hawaii's general excise tax as applied to an airline's gross receipts derived from ground transportation. *Kamikawa v. Lynden Air Freight, Inc.*, 89 Haw. 51, 54–55, cert. denied, 526 U.S. 1087 (1999). There, the tax equaled "four per cent of the gross income" of any service business in Hawaii. *Id.*

---

[5] Section 1513(a) prohibited state taxes "directly or indirectly" on the gross receipts derived from air commerce or transportation. 49 U.S.C. § 1513(a). Although Section 40116(b) does not contain that same language, Congress recodified Section 1513(a) as Section 40116(b) "without substantive change." Act of July 5, 1994, Pub. L. No. 103–272, § 1(a), 108 Stat. 745, 745. The words "directly or indirectly" were "omitted as surplus." 49 U.S.C. § 40116 historical and revision notes (West 2024). Accordingly, cases applying Section 1513 are directly applicable to this appeal.

at 52, n.1 (quoting Haw. Rev. Stat. § 237–13(6) (1998)). To calculate taxable "gross income," an entity multiplied its "worldwide revenue" by the ratio of its Hawaii ground costs to its worldwide costs, similar to an apportionment factor. *Id.* at 53, 57. The court upheld the tax insofar as it was "based *exclusively* on revenues derived from the sale of 'non-air' transportation and services." *Id.* at 57. Stated differently, the AHTA required Hawaii "to measure gross income *excluding* gross receipts derived from the sale of 'air transportation.'" *Id.*

Most recently, in 2017, the Texas Comptroller ruled in an administrative proceeding that the AHTA preempts the Texas sales tax as applied to gross receipts from the sale of skydiving jumps. *State Office of Admin. Hearings*, Dkt. No. 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.26, 2017 WL 3842067, at *8. The Comptroller's ruling recognizes that the AHTA's preemptive scope preempts state taxes—regardless of how they are labeled—if they are imposed on or measured by the gross receipts from air commerce or transportation.

## II.    American's As-Applied Challenge

The Comptroller does not directly address American's as-applied challenge to the Texas franchise tax in this case. American contends that AHTA preemption depends on the franchise tax's particular application to its transportation revenues, not the franchise tax's nature as a whole. The Comptroller, on the other hand, focuses his arguments on the purpose and nature of the franchise tax as a composite tax that does not tax American's overall revenues.

As a result of his view, the Comptroller argues that *Aloha Airlines*'s purported "purpose and effect test" is the "only binding precedent on this Court specifically regarding AHTA preemption." He argues the Texas franchise tax acts in neither purpose nor effect like the taxes the Supreme Court or other state courts have held preempted by the AHTA. Those taxes, according to the Comptroller,

9

"could be broken down by revenue stream and result[ed] in a levy on gross receipts." *See, e.g.*, *Aloha Airlines*, 464 U.S. at 10 (four percent of gross income); *Air Transp.*, 91 A.D.2d at 170 (three-quarters of one percent of gross earnings); *Kamikawa*, 89 Haw. at 52, n.1 (four per cent of gross income). By comparison, he argues, the Texas franchise tax is a composite tax based on a taxable entity's entire business and levied on taxable margin. He claims that American's challenge to the franchise tax based on isolated revenue streams runs afoul of the tax's nature. We disagree.

*Aloha Airlines* does not support the Comptroller's "purpose and effect test" argument. There, the Supreme Court used "purpose and effect" as a lens to assess whether Hawaii's property tax (despite its label) was "imposed on or measured by" the gross receipts from air commerce or transportation. *Aloha Airlines*, 464 U.S. at 13–14, n.10. Since it was, it "constitute[d] at least an 'indirect' tax on the gross receipts of airlines." *Id.* at 14 (quoting 49 U.S.C. § 1513(a)). The Court did not inquire into the Hawaii Legislature's motivation for imposing the tax. Instead, the Court's reference to the tax's "purpose" was intertwined with its analysis of the tax's practical effect. *See id.* at 13–14 ("The manner in which the state legislature has described and categorized [the tax] cannot mask the fact that the purpose and effect of the provision is to impose a levy upon the gross receipts of airlines.").

Nevertheless, the Comptroller argues the Texas franchise tax, in effect, is not measured by or imposed on the gross receipts of American's transportation revenues because it is a composite tax calculated from a taxpayer's entire business and imposed on taxable margin. At most, he argues, the gross receipts from American's transportation revenues are an "element" of the taxable margin formula, "not what the franchise tax is imposed on."

In support of his position, the Comptroller argues that total revenue must be

10

calculated based on a taxable entity's "entire business." *See* Tex. Tax Code § 171.1011 ("Determination of Total Revenue from Entire Business"). He contends that total revenue is not synonymous with gross receipts from isolated revenue streams because the total revenue calculation permits various deductions and exclusions, including for bad-debt expense and foreign royalties and dividends. *See id.* § 171.1011(c)(1)(B). The Comptroller further asserts that the compensation deduction's availability confirms that the franchise tax is not based on gross receipts. Finally, he argues the tax is not measured by isolated revenue streams because the margin adjustment, apportionment factor, and applicable tax rate each reflect an entity's overall business structure and activities.

The Comptroller's emphasis on the franchise tax's composite nature does not respond to American's as-applied challenge. The franchise tax's deductions and exclusions—insofar as they do not apply to American's transportation revenues—do not save the tax from AHTA preemption. *See* discussion *infra* Section III. The Comptroller has recognized as much. For example, in *State Office*, the Comptroller ruled that the AHTA preempts the Texas sales tax as applied to gross receipts from the sale of skydiving jumps. 2017 WL 3842067, at *8. Both the Texas sales tax and the Texas franchise tax permit various deductions and exclusions. *See* Tex. Tax Code §§ 151.007(c)(2)–(3) (allowing exclusions for refunded returns), .426 (allowing adjustments for bad debts, returned merchandise, and repossessions). Thus, the mere existence of the franchise tax's deductions and exclusions does not save it from AHTA preemption.

Further, in *Air Transportation*, the calculation for New York's franchise tax imposed on "gross earnings" included various components besides "gross receipts from the sale of air coverage." 91 A.D.2d at 170. Nonetheless, there the court held that the AHTA preempted the tax "insofar as gross earnings [were] measured

by gross receipts" from air commerce or transportation. *Id.* at 172. Likewise, here the Texas franchise-tax calculation contains various components, including the gross receipts from American's transportation revenues. *See* Tex. Tax Code § 171.1011(c)(1)(A)(i) (requiring a taxable corporation to include its income, as reportable on its federal tax return, in the taxable margin calculation). The franchise tax's deductions and exclusions—including the compensation deduction—do not save it from AHTA preemption insofar as taxable margin ultimately contains the gross receipts from American's transportation revenues.[6] So too for the apportionment factor. In *Kamikawa*, for example, Hawaii's excise tax included an apportionment factor, but there the court still required Hawaii "to measure gross income *excluding* gross receipts derived from the sale of 'air transportation.'" 89 Haw. at 57.

In a final attempt to save the Texas franchise tax from AHTA preemption, the Comptroller, relying on *Sunstate Equipment Company*, argues the tax is imposed on "taxable margin," not gross receipts from air commerce or transportation. 601 S.W.3d at 690. In *Sunstate*, the Supreme Court of Texas explained that the COGS deduction is not "tantamount to an exemption" because the franchise tax "is not a tax on revenue," but is instead "levied on a taxable entity's 'taxable margin.'" *Id.* (quoting Tex. Tax Code § 171.002).

But neither *Sunstate*, nor any other case cited by the Comptroller, addressed whether particular revenue streams within the taxable margin calculation may

---

[6] Relatedly, the Comptroller argues that if American excludes its transportation revenues from the franchise-tax calculation, then American would be *required* to take the compensation deduction, thereby resulting in a deduction from its transportation revenues. This argument has two flaws. First, it is internally inconsistent. If American removed its transportation revenues from the calculation, the compensation deduction could no longer apply to them. Second, it is irrelevant. Here, the relevant analysis is whether the franchise tax is impermissible if American includes its transportation revenues in the calculation. In that case, American would be required to take the seventy percent margin adjustment. *See* discussion *infra* Section III.

12

render the franchise tax preempted by federal law. Moreover, those cases addressed the appropriate use of the COGS margin deduction, not the seventy percent margin adjustment involved here. *See, e.g.*, *Am. Multi-Cinema*, 605 S.W.3d at 46 (holding movie theater could not deduct certain film exhibition costs as COGS); *Sunstate Equip. Co.*, 601 S.W.3d at 703–04 (holding heavy equipment leasing company could not deduct certain costs associated with delivery and pickup of equipment as COGS); *Gulf Copper*, 601 S.W.3d at 685 (holding company that surveyed, repaired, and upgraded offshore oil-and-gas rigs could not deduct certain subcontractor payments as COGS).

In sum, AHTA preemption depends not on whether the Texas franchise tax is a "straight-forward gross receipts tax," *Aloha Airlines*, 464 U.S. at 13, but instead on whether it is "imposed on or measured by" the gross receipts from American's transportation revenues. *Id.* at 14, n.10. Although the Texas Legislature did not style the franchise tax as a straight-forward gross-receipts tax, the AHTA preempts it insofar as taxable margin is "measured by gross receipts" from American's transportation revenues. *See Air Transp.*, 91 A.D.2d at 172 (holding the AHTA preempted New York's franchise tax "insofar as gross earnings [were] measured by gross receipts from air carriage"); *Kamikawa*, 89 Haw. at 57 (holding the AHTA required Hawaii "to measure gross income excluding gross receipts derived from the sale of 'air transportation'").

Accordingly, we conclude that as applied to American's 2015 franchise-tax report, the AHTA preempts the Texas franchise tax insofar as it is imposed on or measured by the gross receipts from American's transportation revenues. We turn now to whether there is sufficient evidence supporting the trial court's finding that there were, in fact, no deductions or exclusions applied to American's transportation revenues.

## III. Sufficiency of the Evidence

The trial court made the following finding of fact:

> There are no deductions or exclusions from American's revenues from passenger ticket sales, passenger baggage fees, and freight transportation. American would pay the franchise tax on 70% of the gross receipts from those sources that are apportioned to the State of Texas.

The Comptroller contends there is no evidence or insufficient evidence to support this finding. We disagree.

To support his argument, the Comptroller points to the total revenue calculation in American's 2015 franchise-tax report. The base of total revenue—reflected by line 1 of the franchise-tax report—is "Gross receipts or sales." Tex. Tax Code § 171.1011(c)(1)(A)(i). "Gross receipts or sales" includes the amount a corporation reports as income on its federal tax return (here, Form 1120, United States Corporation Income Tax Return). *Id.* The Comptroller argues that American reported a *net* value for income on its Form 1120. Further, the Comptroller argues that in calculating total revenue, American reported negative values of approximately $83 million for "Other income" and $1,225,565 for "Gains/losses," and excluded $87,391,913 from gross revenue.

But there is ample evidence that the final total revenue output in American's 2015 report included the gross receipts from American's baggage fee revenue. For instance, at trial American produced a statement posted to the Comptroller's website stating that "everywhere gross receipts will almost always equal total revenue." Additionally, Patrick Smith, American's Managing Director and Chief Tax Officer, testified that total revenue and gross receipts are "almost always synonymous." Smith also testified that if American included all its transportation revenues in the franchise-tax report, there would be no deductions or exclusions

14

applied to the gross receipts from those revenue sources. Further, Teresa Bostick, a tax analyst at the Comptroller's office, testified at trial that the exclusions from total revenue "are either excluded because they were never actually receipts by the taxpayer or because they're taxed elsewhere." At her deposition, Bostick testified that she was unaware of any revenue exclusions that specifically applied to American's transportation revenues.[7] Accordingly, sufficient evidence exists that, as applied to American's 2015 franchise-tax report, there were "no deductions or exclusions from American's revenues from passenger ticket sales, passenger baggage fees, and freight transportation."

The record also contains sufficient evidence that "American would pay the franchise tax on 70% of the gross receipts from those sources that are apportioned to the State of Texas." At trial, Peter Thayer, the Comptroller's auditor who audited American's 2015 report, testified that the Comptroller does not dispute that American correctly used the seventy percent margin adjustment to calculate its margin. Moreover, Thayer's audit of American's 2015 report, which included all of American's transportation revenues, applied the seventy percent margin adjustment. Likewise, American's witness, Smith, testified that if American had included all its transportation revenues in its 2015 report, American would be required to apply the seventy percent margin adjustment.

Lastly, the trial court heard evidence that, mathematically, the seventy percent margin adjustment to total revenue is equivalent to a seventy percent adjustment to the tax rate.[8] Thus, the Texas franchise tax, as applied to

---

[7] While Bostick later retracted her statement at trial, the trial court permissibly credited her deposition testimony. We do not disturb the trial court's credibility determinations. *See Golden Eagle Archery*, 116 S.W.3d at 761 (holding that the trier of fact is the sole judge of the weight and credibility of witness testimony).

[8] That is, if total revenue was $10, the seventy percent margin adjustment yields a margin of $7. If then the tax rate was one percent, the tax would equal $0.07. But if the State replaced

15

American's transportation revenues in its 2015 franchise-tax report, is a tax on a direct percentage of American's gross receipts from its apportioned transportation revenues.[9]

Accordingly, there is legally and factually sufficient evidence to support the trial court's finding that the Texas franchise tax is a gross-receipts tax as applied to American's transportation revenues.

## CONCLUSION

The trial court correctly concluded that the AHTA preempts the Texas franchise tax as applied to American's transportation revenues "because it is an impermissible tax on 'gross receipts' from 'air commerce or air transportation.'" *See* 49 U.S.C. § 40116(b)(4). Accordingly, the trial court correctly refunded American $107,577.04 plus interest and denied the Comptroller's counterclaim. We affirm the trial court's judgment.

/s/ *Scott K. Field*
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

---

the seventy percent margin adjustment with an equivalent adjustment to the tax rate (making the tax rate 0.7 percent), the resulting tax would be the same ($10 multiplied by 0.7 percent equals $0.07). This result holds regardless of the apportionment factor.

[9] The tax rate is irrelevant to our analysis, as it merely represents the percentage of an entity's taxable margin that results in its tax liability. Tex. Tax Code § 171.002.